KIRBY AISNER & CURLEY LLP  
*Attorneys for the Debtor*  
700 Post Road, Suite 237  
Scarsdale, New York 10583  
Tel: (914) 401-9500  
Dawn Kirby, Esq.  
dkirby@kacllp.com  
Dana Brescia, Esq.  
dbrescia@kacllp.com  

Hearing Date: *May 27, 2025*  
Hearing Time: *3:30 a.m. (EST)*  
*Via Zoom for Government*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------X  
In re:

    FIRSTBASE.IO, INC.

                       Debtor.  
-----------------------------------------------------------X

Chapter 11  
Case No. 24-11647 (LGB)

## DEBTOR'S REPLY TO HARBOR BUSINESS COMPLIANCE CORPORATION'S OBJECTION TO DEBTOR'S MOTION FOR AN ORDER FURHTER EXTENDING EXCLUSIVE PERIODS PURSUANT TO 11 U.S.C. §1121(d)(1)

**TO:**     **THE HONORABLE LISA G. BECKERMAN,**  
             **UNITED STATES BANKRUPTCY JUDGE:**

      Firstbase.io, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" )[1], by its attorneys, Kirby Aisner & Curley LLP, hereby submits this reply to the Objection (ECF No. 126, the "Objection") of Harbor Business Compliance Corporation ("Harbor") to Debtor's motion (the "Motion") for an Order Further Extending Exclusive Periods pursuant to §§ 105(a) and 1121(d)(1) of the Bankruptcy Code [ECF No. 118] . In further support of the Motion, the Debtor respectfully represents as follows:

---

[1] Capitalized terms used in this Reply but not immediately defined have the meanings given to them in the Motion.

1. Harbor's Objection refuses to recognize the progress the Debtor has made in its chapter 11 case and is intended simply to portray the Debtor in a negative light precisely at the time that the Debtor is working on raising financing to pay all creditors holding allowed claims in full and Harbor and the Debtor are on the verge of mediation.

2. Further, a key basis of Harbor's objection is a desire to file its own plan that, on its face, is unconfirmable and would run roughshod over the Third Circuit's decision to expedite and hold oral argument in a few weeks on the appeal that will determine whether Harbor even has any claim against the Debtor.

3. Finally, Harbor ignores the fact that it has sought to upend this entire bankruptcy by belatedly claiming that the Debtor's property is in fact "stolen property" that Harbor wants back. Indeed, in the complaint it recently filed, Harbor wholeheartedly admits that nothing can be done – no sale of assets and no reorganization – until this "stolen property" issue is resolved. (*See* ECF No. 72 at ¶ 75). The Debtor has moved to dismiss and is awaiting a resolution by this Court. Until the issue is resolved, Harbor's effort to undermine the course of the case is working but it ***supports*** extending exclusivity.

A. **Debtor has Demonstrated Substantial Progress**

4. This chapter 11 case, which was filed on September 25, 2025, has been pending for a total of eight (8) months. During that time an enormous amount of activity and progress has been achieved.

5. The Debtor has been involved in two adversary proceedings- first, initiated by the Debtor, seeking to classify and avoid as a preference Harbor's lien as a judicial lien (so that its claim could appropriately be treated in the Debtor's chapter 11 plan) which resulted in a favorable ruling for the Debtor [ECF No. 124] and second, recently initiated by Harbor seeking declaratory and injunctive relief against the Debtor and monetary claims against it's the Debtor's officers.

6. In addition, Harbor has pursued discovery under Bankruptcy Rule, which has required extensive document production and subsequent examinations of the Debtor's chief officers, Filipe Senna and Mark Milastsivy. Much of the discovery sought involved exceedingly small (and easily explainable) costs[2] that do not come close to justifying the cost of the deposition itself.

7. Throughout the pendency of this case the Debtor has diligently responded to Harbor's requests in addition to fulfilling its general chapter 11 obligations. Nevertheless, Harbor still claims, without basis, that the Debtor is 'unwilling to administer this case meaningfully' (*See* Objection ¶ 22).

8. Harbor claims that the Debtor has not demonstrated substantial progress (*See*, Objection ¶ 28). This statement is inaccurate and false. Harbor's assertion that the Debtor's reorganization efforts consist 'merely of sending emails' misrepresents the nature of Debtor's efforts (*See*, Objection ¶ 16). The Debtor has engaged in and continues to be a part of numerous substantive and in-person meetings as is common in professional settings. Such in-person meetings are scheduled and confirmed by email, copies of which were accordingly provided as evidence of Debtor's financing efforts. The existence of these emails does not diminish the significance of the efforts but rather supports the conclusion that the Debtor is professional while approaching potential investors.

9. Since the filing of the Debtor's First Exclusivity Motion, the Debtor has continued to pursue financing and had engaged in constructive discussions with potential investors. These discussions are ongoing and have not yet resulted in a definitive written agreement- due in large part to the complexities of this case, including the adversary proceeding- the Debtor has still made progress. Specifically, the Debtor has had discussions with at least one investor who has expressed support for a valuation that significantly exceeds the total amount of all claims asserted against the Debtor's estate, even

---

[2] Like meals, office supplies, four-figure and five-figure payments to vendors, independent contractors, and employees. Harbor's counsel spent hours at depositions asking questions on such things as whether the Debtor's senior officer should have purchased office supplies in Manhattan versus Brooklyn.

assuming that Harbor's judgment is ultimately affirmed. Notably, this valuation is also robust to indicate meaningful recoveries not only for creditors but also for existing equity holders.

10. The Debtor has also engaged in good faith negotiations with multiple lenders, investors and potential strategic acquirers- including a nationally recognized leader in the Registered Agent industry and several prominent private equity firms, all of whom proactively approached the Debtor which also includes current investors. A copy of relevant correspondences and executed non-disclosure agreements is annexed as **Exhibit A**.

11. The Debtor has also maintained positive cash-flow which underscores its viability as a going concern. It is submitted that the current investor's continued confidence in the Debtor's operations and management is also evidenced by its willingness to make additional investments in the Debtor.

12. In parallel to its financing efforts, the Debtor has continuously worked towards revamping its existing business and product offerings. Specifically, the Debtor is preparing to launch a new product that is expected to increase its revenue which shall invariably result in an increase in funds to be used for distribution under the plan. This product ***does not in any way*** implicate Harbor's purported trade secrets but, if Harbor's course of conduct is any guide, the Debtor runs the risk that Harbor will claim that it does.

13. An additional extension of time will allow the Debtor to generate more revenue and secure viable financing that will only strengthen the distribution under the chapter 11 plan the Debtor intends to propose.

B. **The Debtor has Cooperated with Harbor in Good-Faith**

14. The Debtor has duly cooperated with Harbor in its Rule 2004 requests including production of documents that delivered thousands of pages along with deposition of its two chief officers for a total of <u>8 hours</u>. Much of the discovery sought has been pointless for purposes of reorganizing, but

4

instead appeared to be designed to give Harbor a reason to seek the appointment and examiner right when the parties were about to begin mediation [ECF No. 123].

15. Harbor asserts that denying the Debtor's request to extend Exclusive Periods will place the parties on a 'level-playing field' in its upcoming mediation (*See*, Objection ¶ 32). Harbor is deliberately mischaracterizing the purpose of the Debtor's request as an exclusivity period provision is mentioned under the Bankruptcy Code to afford the Debtor a fair opportunity to propose a plan that will be acceptable to its creditors. This provision is not intended to advantage or disadvantage any party in a mediation. Particularly, since the Debtor is making meaningful progress in its reorganization, granting its Motion will prevent any unnecessary complexity or uncertainty in the mediation process.

### C. Harbor's "Stolen Property" Adversary Proceeding

16. In addition to forcing the Debtor's estate to incur significant costs to avoid Harbor's lien (thus confirming what should have been obvious to Harbor for months – that it is merely an unsecured (and disputed) unsecured creditor – on February 12, 2025, Harbor initiated a brand new adversary proceeding. In this new complaint, Harbor seeks a declaration that a "material portion of the Debtor's product offerings" are actually owned by Harbor or using trade secrets owned by Harbor, seeks a mandatory injunction compelling the Debtor to "turn over" to Harbor such "stolen property," and suing the Debtor's officers for tortious interference

17. There is no doubt Harbor knew this would be disruptive. Indeed, at paragraph 75, it wrote: "[b]ecause all of the reorganization options referenced by the Bankruptcy Court require the Debtor's assets, including the Stolen Property, to be marketed and valued, determining the ownership rights to the Stolen Property is necessary before any marketing or valuation process can occur."

18.     Though Harbor's complaint was not clear, subsequent briefing and oral argument revealed that what Harbor is claiming is that it gave an implied license to the Debtor and that because the Debtor has not paid the judgment, Harbor is entitled to force the Debtor to turn over the Debtor's products to Harbor. While this theory turns bankruptcy law on its head, tt bears noting that this newly minted request was never previously raised by Harbor. At all times, it claimed it was a secured creditor at most. It never sought adequate protection as a licensor under Bankruptcy Code section 363(e) and never sought payment as an administrative expense for the Debtor's purported use during the case.

19.     Because of the obvious disruption to the Debtor's reorganization efforts, the Debtor quickly moved to dismiss on, among other grounds, *res judicata* and collateral estoppel. Oral argument occurred on May 20. The Court noted that while the district court's decision attached to the complaint clearly ***implied*** that Harbor had sought, and was denied, a permanent injunction that would cover the relief sought by Harbor now, the Court did not have the benefit of the briefing and oral argument before the district court.[3] When Debtor's counsel offered to supplement, Harbor's counsel made sure to object.

20.     What Harbor is hiding is that its counsel expressly requested a permanent injunction that required the Debtor to immediately return, and cease using, any trade secret and confidential information beside what already existed in the Start and Agent products—which the Debtor was permitted to use for the remainder of the trade secrets' economic lives. This use was not conditioned on treating the Debtor as having an implied license. The district court, as this Court knows, denied the request for a permanent injunction, finding it "overly broad." DCt Dkt. 268, at 50.

---

[3] Including items that Harbor demanded be filed under seal.

21. Thus, in the event that the Court does not grant the Debtor's motion to dismiss, the Debtor intends to request permission to file a summary judgment motion invoking *res judicata* and collateral estoppel and will attach what Harbor sought to hide from this Court. Harbor's disruptive claims must be resolved quickly.

### D. **Harbor's Proposed Term Sheet is Unreasonable and One-Sided.**

22. Habor submits to this Court a term sheet (*See*, Objection Exhibit 7) that cannot be viewed as a good-faith basis for objection to the Debtor's reorganization efforts. The term sheet is patently unreasonable and fails to reflect the realities of the case.

23. First, Harbor assumes that its claim is allowed in full even though the Debtor's expedited appeal is currently pending before the Third Circuit. In other words, Harbor's claim is a disputed claim, not an allowed claim.

24. Second, in an attempt to wipe out existing equity and to create a distressed valuation devoid of factual basis, it values the Debtor far below its actual worth which is misleading to the Debtor's other creditors and overpays Harbor's claim, which is flatly illegal under the Bankruptcy Code.

25. Third, by giving itself 100% of the equity ownership in the Debtor (a business that is cash flow positive) but giving everything general unsecured creditor speculative recoveries, Harbor necessarily would unfairly discriminates against other general secured creditors. Such a position is wholly inequitable to both the Debtor and other creditors and underscores Harbor's true goal of attempting to take the reins of the Debtor's reorganization process. Such a plan is not confirmable as a matter of law.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order extending the Debtor's Plan Exclusivity period until September 22, 2025, and extending the Debtor's Solicitation Exclusivity period until November 21, 2025, together with such other and further relief as is just and proper under the circumstances.

Dated: Scarsdale, New York
       May 23, 2025

                                          KIRBY AISNER & CURLEY LLP
                                          *Attorneys for the Debtor*
                                          700 Post Road, Suite 237
                                          Scarsdale, New York 10583
                                          Tel: (914) 401-9500

                                          By: */s/ Dawn Kirby*
                                                Dawn Kirby, Esq.