| | |
|---|---|
| WILLIAM K. HARRINGTON<br>UNITED STATES TRUSTEE, REGION 2<br>U.S. Department of Justice<br>Office of the United States Trustee<br>Southern District of New York<br>Alexander Hamilton Custom House<br>One Bowling Green, Suite 534<br>New York, NY 10004<br>Tel. (212) 510-0500<br>By:    Andrew D. Velez-Rivera, Esq.<br>          Trial Attorney | Hearing Date: July 10, 2025<br>Hearing Time: 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                                :
In re                                                                        :    Case No. 24-11647 (LGB)
                                                                                :
**FIRSTBASE.IO, INC.,**                                      :    Chapter 11
                                                                                :
                                            Debtor.         :
-------------------------------------------------------------------X

### (I) OBJECTION OF THE UNITED STATES TRUSTEE TO FIRST INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED BY QUINN EMANUEL URQUHART & SULLIVAN, LLP, AND (II) GENERAL RESPONSE TO INTERIM FEE APPLICATIONS

TO:    THE HONORABLE LISA G. BECKERMAN,
           UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2, by and through his undersigned counsel, hereby submits this objection to the first interim application ("Fee Application") of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel" or "Firm"), as special litigation counsel to the debtor, Firstbase.io, Inc. ("Debtor"), for allowance of compensation and reimbursement of expenses incurred for the first interim period (Oct. 1, 2024 through April 30, 2025). Dkt. 152. The United States Trustee also files hereby a general

response to all three interim fee applications – Quinn Emanuel's, Kirby Aisner & Curley LLP's ("KAC"), and Dilworth Paxson LLP's.

In support of this objection and response, the United States Trustee respectfully represents and alleges as follows:

## BACKGROUND

1. On September 25, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Dkt. 1.

2. The Debtor is operating his business and managing its property as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee, examiner or official committee of unsecured creditors has been appointed.

3. On December 2, 2024, the Court entered an order authorizing the retention and employment of Quinn Emanuel as Special Litigation Counsel to the Debtor. Dkt. 45. An order expanding the scope of the Firm's legal services was entered on March 26, 2025, (Dkt. 109), and currently on presentment is a request by the Debtor to expand the Firm's scope further. Dkt. 146-147.

4. On February 12, 2025, Harbor Business Compliance Corporation ("Harbor") initiated an adversary proceeding ("Adversary Proceeding") against the Debtor, its CEO, Mark Milastsivy, and its COO, Felipe Senna (together, "Officers"), seeking (1) declaratory relief that certain items used by the Debtor are not property of the bankruptcy estate, (2) ordering the Debtor to turn over those items and all related revenues, and (3) determining that the Debtor's Officers are liable for tortious interference, among others. (A.P. 25-1032-LGB). Quinn Emanuel represents the Debtor and its Officers in the Adversary Proceeding.

## **LEGAL STANDARD**

**I.      Reasonableness of Fees**

Bankruptcy Code Section 330(a)(1) provides that:

> After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –
>
> (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

Section 330 of the Bankruptcy Code focuses on reasonableness and benefit to the estate of the professionals' services. *In re Lederman Enter., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Fibermark, Inc.*, 349 B.R. 385, 396 (Bankr. Vt. 2006). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a benefit to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997).

Each applicant bears the burden of proof in all fee matters. *In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009); *In re JLM, Inc.*, 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997). The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation. *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988).

The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors." In re *Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). Under

3

Bankruptcy Code § 330, the Court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention. *In re Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995).

## OBJECTIONS

**(1)** **Allocation of Fees and Expenses.** Quinn Emanuel is representing multiple defendants in the Adversary Proceeding, of which the Debtor's estate is only one. The Firm, therefore, should disclose who is paying what at this first interim stage.

Though containing a summary of general project categories, including a general "Litigation" category, the Quinn Emanuel Fee Application fails to contain specific project categories. *See* Fee Application, at 7 of 11. The Fee Application also fails to isolate or otherwise identify the total sum of fees that Quinn Emanuel incurred for the Adversary Proceeding during the first interim fee period.[1]

In any event, of fees incurred for the Adversary Proceeding, the Fee Application also fails to disclose how much Quinn Emanuel is charging the Debtor, how much the Firm is charging Mr. Milastsivy (if anything), and how much the Firm is charging Mr. Senna (if anything) at this first interim stage. These figures must be disclosed, and broken down.

---

[1] This vacuum of information is why the Court's *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York* provide that "[t]here should be a separate category established for each matter (*e.g.* XYZ Litigation)." *See* Amended Guidelines, at 8. Quinn Emanuel is representing the Debtor in different matters in different courts, and is seeking an allowance approaching a million dollars here, but its perfunctory Fee Application fails to establish meaningful project categories. The Dilworth Paxson and Kirby Aisner Curley fee applications also don't establish separate categories for each litigation matter, but seek much more modest allowances.

**(2)     Fees for Pursuing Sanctions.**  The Court should disallow all fees corresponding to Quinn Emanuel's pursuit of Rule 11 (F.R.B.P. 9011) sanctions against Harbor, and its filing of a motion for sanctions, which the Firm later withdrew.

On February 15, 2025, just three days after Harbor filed its Complaint in the Adversary Proceeding, Quinn Emanuel began working on its pursuit of sanctions against Harbor. *See* Fee Application, at 26 of 56 (time entry of EDW, dated 02/15/25). On February 18, 2025, the Firm transmitted a "safe-harbor" letter to Harbor in order to comply with Rule 9011(c)(2)(B). *See* Dkt. 97, Reply, ¶ 6, at 3 of 5; and Fee Application, at 3 of 56 (second "Response"), and at 27 of 56 (time entry of DLS, dated 02/18/25). Harbor appears to have responded to the safe-harbor letter in late March. *See* Fee Application, at 42 of 56 (DM4's time entry dated 03/31/25, "review sanctions response").

On April 4, 2025, Quinn Emanuel filed a motion to dismiss the Adversary Proceeding on behalf of the Debtor and its Officers, along with a motion for the imposition of Rule 11 sanctions against Harbor. A.P. Dkt. 11-12. But on April 15, 2025, the Firm withdrew the sanctions motion. A.P. Dkt. 18. Given the well-documented, scorched-earth litigation between Harbor and the Debtor and its Officers in multiple forums, all indications are that the pursuit of sanctions against Harbor was merely an over-charged litigation tactic, even considering the high voltage of this case.[2]

//

//

//

---

[2]  In its Memorandum of Law in support of the sanctions motion, Quinn Emanuel dedicated just a single page of boilerplate narrative to the sanctions matter, without ever fully briefing it. *See* A.P. Dkt. 11, at 43-44 of 44.

Quinn Emanuel has rendered services totaling at least $26,892.50 in connection with the safe-harbor letter and the sanctions motion.[3] Fees incurred for these services were unreasonable, and never conferred a benefit to the estate. They should be disallowed.

## GENERAL RESPONSE

At the moment, this chapter 11 case is being fought out in three separate courthouses, with each forum adding its own layer of uncertainty. The pre-petition judgment entered in Harbor's favor against the Debtor is currently on appeal to, and under submission at, the Third Circuit Court of Appeals. Harbor's appeal of the Court's ruling in the Debtor's preference action is pending in the district court. Then in this Court, the Debtor's motion to dismiss Harbor's Adversary Proceeding is under submission,[4] an inchoate examiner motion lies on the docket, the Debtor has lost its coveted exclusivity, and in its latest skirmish with the Debtor, Harbor is

---

[3] Fees incurred by Quinn Emanuel in connection with the safe-harbor letter and sanctions motion, as gauged by the United States Trustee, are as follows:

| Date | Timekeeper | Time (hr.) | ($) Fee |
|---|---|---|---|
| 02/15/25 | EDW | 0.10 | 185.50 |
| 02/15/25 | JM4 | 3.30 | 4,834.50 |
| 02/16/25 | JM4 | 3.00 | 4.395.00 |
| 02/17/25 | JM4 | 7.30 | 10,694.50 |
| 02/17/25 | DLS | 2.40 | 1,597.00 |
| 02/18/25 | EDW | 0.40 | 742.00 |
| 02/18/25 | JM4 | 0.40 | 586.00 |
| 02/18/25 | DLS | 0.50 | 927.50 |
| 03/03/25 | DM4 | 0.25 | 298.75 |
| 03/31/25 | DM4 | 0.40 | 478.00 |
| 04/01/25 | EDW | 0.25 | 463.75 |
| 04/04/25 | EDW | 0.10 | 185.50 |
| 04/04/25 | JM4 | 0.50 | 732.50 |
| 04/15/25 | JM4 | 0.40 | 586.00 |
| 04/15/25 | MAG | 0.30 | 186.00 |
|  |  |  | **$26,892.50** |

[4] The United States Trustee reserves his right to object to the current interim fees relating to the Adversary Proceeding, and future interim and final fees.

asking for a Rule 2004 order in order to obtain documents for its own proposed plan. All while the time records filed by the Debtor's professionals, reflecting a cautious approach, show virtually no time spent on a plan or a sale, nine months into the case.

The Debtor and Harbor are now in mediation, which raises hopes. But colloquially put, the end result of this kitchen-sink bankruptcy case is still anybody's guess, with creditors bearing the risk of all that uncertainty.

And now have a documented administrative insolvency problem. As an initial matter, the collective amount being sought in the interim fee applications filed by the Debtor's professionals, ($1,202.875.50), far exceeds the amount expected to be held in escrow as of the July 10 fee hearing, ($271,000), and KAC's retainer, ($47,141.15). *See* KAC Fee Application at 1 n.1, and ¶ 77 at 13.

But far more importantly, if interim fees were to be fully allowed, and permitted to be paid from the Debtor's cash on hand, then essentially, the cash would be eviscerated. As of the end of May 2025, the Debtor held $920,920 in cash. (Dkt. 161, Part 1.d). If the escrow funds and the KAC retainer are exhausted first, and if the Debtor's cash is then used to pay the balance of fully-allowed interim fees, the Debtor would have a mere $36,186 left over. As a matter of basic estate protection, the Court should not allow that to happen.

For that reason, in lieu of a holdback, the Court should allow (and authorize the payment of) interim fees and expenses for each estate professional in amounts no greater than the amounts being held for them in escrow as of the interim fee hearing pursuant to the interim cash collateral orders entered by the Court (and the KAC retainer). Alternatively, at a minimum, the Court should authorize payments to the professionals of no more than the total amounts held in the escrow as of the hearing (and the KAC retainer).

**CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order reducing Quinn Emanuel's fees for the first interim fee period by $26,892.50, and grant such other relief as is just and proper.

Dated:  New York, New York
        July 3, 2025

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By: */s/ Andrew D. Velez-Rivera*
Andrew D. Velez-Rivera
Trial Attorney
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004
(212) 510-0500