KIRBY AISNER & CURLEY LLP             *Hearing Date: July 10, 2025*
*Attorneys for the Debtor*                     *Hearing Time: 10:00 a.m. (EST)*
700 Post Road, Suite 237                *Via Zoom for Government*
Scarsdale, New York 10583
Tel: (914) 401-9500
Dawn Kirby, Esq.
dkirby@kacllp.com
Dana Brescia, Esq.
dbrescia@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

    FIRSTBASE.IO, INC.

                      Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 24-11647 (LGB)

## DEBTOR'S REPLY TO HARBOR BUSINESS COMPLIANCE CORPORATION'S LIMITED OBJECTION TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER FURTHER EXPANDING THE SCOPE OF SPECIAL COUNSEL'S RETENTION AND EMPLOYMENT

TO:    THE HONORABLE LISA G. BECKERMAN,
         UNITED STATES BANKRUPTCY JUDGE:

      Firstbase.io, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "Firstbase"), by its attorneys, Kirby Aisner & Curley LLP ("KAC"), hereby submits this reply to the Limited Objection (the "Objection") of Harbor Business Compliance Corporation ("Harbor") to Debtor's application (the "Application") for an Order further expanding the Scope of Quinn Emanuel Urquhart & Sullivan's ("QE") Retention and Employment, and respectfully represents as follows:

      1.    Harbor's Objection asserts that the Debtor's request to expand the scope of QE's employment to include representation of the Debtor in the pending appeal of the Avoidance Judgment

should be considered pursuant to Bankruptcy Code Section 327(a), not Section 327(e ) as submitted by Debtor in its Application, alleging that QE's proposed services rise to the level of "conducting the case".

2. Harbor's assertion is not based upon the facts of this case and is merely an attempt to gain a litigation advantage against the Debtor in the Avoidance Appeal.

3. QE was chosen to represent the Debtor in the Avoidance Appeal because it is best suited to do so. QE is intricately familiar with the facts and issues presented in the Avoidance Appeal, has a thorough understanding of the procedural rules of the District Courts and has extensive experience practicing before the appellate court of the Second Circuit.

4. QE's expanded employment is limited to representation of the Debtor in the Avoidance Appeal, which is a far cry from "conducting the case". KAC has been and will continue to represent the Debtor in conducting the case, which includes formulating, negotiating, finalizing and seeking confirmation of a reorganization plan, reviewing and objecting to claims, retaining professionals as necessary, addressing all filed motions and guiding the Debtor though the Chapter 11 proceeding.

5. Courts routinely approve applications to retain law firms as special counsel under Bankruptcy Code Section 327(e) for the purpose of pursuing preference actions. See *Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993)(Chapter 7 trustee, under section 327(e) could employ attorney for petitioning creditor in involuntary case to prosecute preference proceedings); *In re El Paso Refinery, L.P.*, 257 B.R. 809 (2000)(Court authorized the employment of special counsel to the Trustee under 11 U.S.C. Section 327(e ) to continue representation of the Trustee in the State Court Litigation on a contingency fee basis and to pursue a preference action).

6. ***Quinn Emanuel's Fees For Firstbase's Sanctions Motion Are Reasonable.*** Firstbase objects to Harbor's and the United States Trustee's request that the Court disallow QE's fees in connection with Firstbase's request for sanctions. *See* Dkt. 163 ("UST Obj.") at 5-6; Dkt. 164

("Harbor Obj.") at 14. All fees in connection with the sanctions motion—reflecting less than 20 hours of attorney time, *see* UST Obj. 6 n.3—are reasonable and warranted. Far from "an over-charged litigation tactic," *see* UST Obj. 5, the sanctions motion was an appropriate response to Harbor's effort to relitigate issues already decided in Pennsylvania federal court, and was fueled by a desire to reduce the financial burden such relitigation would have on the estate and its creditors—either through withdrawal of the complaint in response to the safe-harbor letter or else fee-shifting as a sanction.

7. Firstbase ultimately withdrew its sanctions motion not because it was unmeritorious, but because the Court advised Firstbase that it would not issue sanctions and suggested that Firstbase might, by withdrawing the motion, spare the Court the burden of formally denying it. In all events, the efforts expended on that motion and associated safe-harbor letter were not wasted. Because Firstbase's sanctions motion rested on the same arguments underlying its motion to dismiss (*i.e.*, that the Adversary Complaint was straightforwardly precluded by principles of res judicata, collateral estoppel, and judicial estoppel), the same work product readily translated to the motion to dismiss.

8. **Litigation Counsel's Fees Do Not Encompass Unauthorized Or Duplicative Services.** Harbor mistakenly conflates QE's and Dilworth Paxton's work on approved litigation tasks as duplicative of KAC's bankruptcy representation. *See* Harbor Obj. 15-17. It is not.

9. *First*, Harbor argues litigation counsel should not be permitted to bill any time to a "Case Administration" billing code. Obj. 15. That is mistaken; Quinn Emanuel and Dilworth Paxton are authorized counsel for three different matters, each separate from the Chapter 11 proceedings, and have substantial "case administration" responsibilities in connection with each. Dkt. 45; Dkt. 109. Notably, Quinn Emanuel and Dilworth Paxton's total time billed to case administration is under 40 hours. *See* Dkt. 152-1 at 5; Dkt. 153-1 at 5.

10. *Second*, Harbor blinks litigation realities by faulting time entries that reflect litigation counsel's coordination with bankruptcy counsel on strategy, case developments, and timeline, as though those invade the purview of bankruptcy counsel's exclusive purview. Litigation counsel obviously need to remain abreast of the status of Chapter 11 proceedings and to synchronize their strategy accordingly. Those needs are especially pressing here because the ongoing litigation in the Third Circuit and the Adversary Proceeding stands to have a profound impact on the estate and creditors' ability to recover on their claims. There is no indication that counsel coordinated excessively or unreasonably in this case; many of the billing entries Harbor cites are for small fractions of an hour. And Harbor is wrong to speculate (Harbor Obj. 16-17) that any of the challenged entries reflect "invasion into KAC's role as bankruptcy counsel" as opposed to providing litigation-oriented advice.

11. **The Compensation Sought Is Commensurate With The Services Provided.** Harbor objects to the Fee Applications "to the extent that the time billed or the rate charged is excessive." Harbor Obj. 17. The requested compensation, however, is reasonable and appropriate, and Harbor provides no substantive basis for its purported concerns.

12. As to "excessive time," Harbor cites only the $137,588.50 billed to prepare the motion to dismiss Harbor's Adversary Complaint and the $123,594 billed to prepare Firstbase's Reply brief in the Third Circuit appeal. Each is facially reasonable—particularly in proportion to the millions of dollars at issue in those actions—and reflects approximately 100 or fewer attorney hours at hourly rates already approved by the Court. *See* Dkt. 109 ¶¶ 1-3. And notably, the time Firstbase's counsel has been forced to spend defending against the Adversary Complaint results directly from Harbor's own litigation strategy, including its insistence on relitigating issues already decided in the Pennsylvania action.

13. Harbor's assertions that QE billed time from "attorneys for routine tasks that should have been handled by a paralegal" both misunderstand the tasks at issue and omit the relevant time increments. For instance, Harbor criticizes Quinn Emanuel attorneys for billing for "prepar[ing] withdrawal of sanctions motion" and "oversee[ing] [its] filing," Harbor Obj. 17-18, both of which plainly necessitate input from attorneys, omitting that Quinn Emanuel billed a more-than-reasonable ***0.1 hours*** of attorney time to each task, *see* Dkt. 152-1 at 51. The other tasks Harbor highlights (including preparing attorney admission materials and reviewing an appellate brief before filing) likewise require an attorney's skills and judgment; notably, in each case Harbor cites, Firstbase delegated such tasks to associates rather than partners billing at higher rates.

14. Debtor is entitled to adequate representation in the Avoidance Appeal by qualified and experienced attorneys familiar with the appellate process and the appellate courts. The attorneys at QE possess such skill and experience. Accordingly, expansion of QE's employment to include representation of the Debtor in the Avoidance Appeal should be granted.

15. QE does not hold any interest adverse to the Debtor or to the estate with respect to the matter for which it is to be employed, nor has Harbor asserted that an adverse interest exists.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order expanding the scope of QE's employment to include representation of the Debtor in the Avoidance Appeal, together with such other and further relief as is just and proper under the circumstances.

Dated: Scarsdale, New York  
       July 8, 2025

KIRBY AISNER & CURLEY LLP  
*Attorneys for the Debtor*  
700 Post Road, Suite 237  
Scarsdale, New York 10583  
Tel: (914) 401-9500

By: */s/ Dawm Kirby*  
    Dawn Kirby