**ROYER COOPER COHEN BRAUNFELD LLC**
**Marc Hirschfield, Esquire**
**1120 Avenue of the Americas, 4th Floor**
**New York, New York 10036-6700**
**Telephone: (212) 994-0451**
**Email: mhirschfield@rccblaw.com**
**Marc Skapof, Esquire**
**Telephone: (212) 994-0452**
**Email: mskapof@rccblaw.com**
**Matthew Faranda-Diedrich, Esquire***
**Three Logan Square**
**1717 Arch Street, Suite 4700**
**Philadelphia, PA 19103**
**Telephone: (215) 839-1000**
**Email: mfd@rccblaw.com**
**\*Admitted *Pro Hac Vice***
*Counsel to Creditor, Harbor Business Compliance Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Firstbase.io, Inc. | : | Case No. 24-11647(LGB) |
| | : | |
| Debtor. | : | |
| | : | |

**HARBOR BUSINESS COMPLIANCE CORPORATION'S
EMERGENCY *EX PARTE* MOTION FOR A THIRD RULE 2004 ORDER**

Harbor Business Compliance Corporation ("**Harbor Compliance**"), by and through its undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 2004 hereby submits its Emergency *Ex Parte* Motion for a Third Rule 2004 Order (the "**Motion**") for the production of certain information from the above-captioned debtor and debtor-in-possession (the "**Debtor**") in the instant chapter 11 case (the "**Chapter 11 Case**"). In support of its Motion, Harbor Compliance respectfully represents as follows:

**RELEVANT BACKGROUND**

1. On September 25, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is managing its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee, examiner, or committee of creditors has been appointed in the Chapter 11 Case.

4. Based on the Debtor's Schedules and Statement of Financial Affairs and the Debtor's Monthly Operating Reports, the Debtor is perilously close to administrative insolvency.

5. The Debtor's exclusivity period ended on May 29, 2025 (see ECF No. 142), but the Debtor has yet to submit a proposed plan of reorganization.

6. By the Debtor's own account, the supposedly "enormous amount of activity and progress" that the Debtor has "achieved" towards reorganization amounts to no more than a handful of meetings with potential lenders and investors and related scheduling emails, which have yet to yield the Debtor any agreements or proposals. See ECF No. 137 at ¶¶ 4, 9.

7. In fact, the Debtor has been just a couple weeks away from finalizing its own plan for at least five months. See the Debtor's Motion for Extension on Exclusivity Period (ECF No. 118) filed April 25, 2025 at ¶ 26 ("Debtor is negotiating the terms of a new investment with one of its current investors … with the term sheet forthcoming"); Mark Milastsivy Dep. Tr. (May 1, 2025) at 25:6-8 ("Q. And when do you expect to have a term sheet, by what date? **A. Within a couple weeks.**") (emphasis added); July 10, 2025 Hearing Tr. at 41:23 – 42:1 ("MS. KIRBY: Mr. Milastsivy has interviewed four investment bankers, and he tells me, as of yesterday he expects to have an engagement letter signed and ready to go within two weeks"); July 24, 2025 Hearing Tr.

at 32:11-16 ("MS. KIRBY: Your Honor, I would mention that the Debtor is on the verge of finalizing an agreement with an investment banker, and has an offer for financing. So I don't have it in a concrete way, but I'm crossing my fingers that between now and a week or two from now, there will be something substantial on the docket from the Debtor.").

8. Once again, two weeks have passed since the Debtor's latest assurances to the Court and it has yet to file anything signaling its progress on a plan of reorganization, much less anything "substantial." Thus, Harbor Compliance's proposed plan of reorganization for the Debtor (the "**Plan**") remains as the Debtor's sole prospect for reorganization. See Draft Term Sheet (ECF No. 126-7).

9. Rather than working on its own plan of reorganization, the Debtor has spent the past two weeks, once again, pursuing every apparent opportunity to impede progress on Harbor Compliance's Plan.

10. As the Court is aware, Harbor Compliance previously sought production of certain financial and business information from the Debtor (the "**First Document Requests**") to perform a valuation of Debtor's business.

11. After the Debtor refused to voluntarily participate in producing responsive documents, Harbor Compliance filed a Motion for a Rule 2004 Order (the "**First Rule 2004 Motion**") (ECF No. 69).

12. The parties fully briefed the First Rule 2004 Motion and the Court heard oral argument from both sides on February 20, 2025.

13. On February 24, 2025, an Order was entered granting the First Rule 2004 Motion (the "**First Rule 2004 Order**") (ECF No. 81) and, since that time, the Debtor has repeatedly sought to shirk its obligations under Rule 2004 and the First Rule 2004 Order.

3

14. On June 30, 2025, Harbor Compliance filed a second motion for a Rule 2004 Order (the "**Second Rule 2004 Motion**") (ECF No. 160) seeking examination by production of certain financial information relevant to the valuation of the Debtor (the "**Second Document Requests**"). (ECF No. 160-2).

15. The Court granted the Second Rule 2004 Motion on July 2, 2025 (the "**Second Rule 2004 Order**") (ECF No. 162).

16. On July 24, 2025, Harbor Compliance again requested production certain financial information relevant to Harbor Compliance's plan of reorganization for the Debtor (the "**Plan**"). See email chain attached as **Exhibit 2**. Harbor Compliance specifically requested:

> A complete download of the Debtor's financial records as stored in their bookkeeping system (believed to be Xero). This download should include, but is not limited to, P&L statements, balance sheets, general ledger, trial balance, bank reconciliation reports and any relevant attachments or source documents as well as any subledgers tracked in Excel or comparable program. Please provide the download in a CSV or Excel export format directly from Xero.

Exhibit 2.

17. Upon information and belief, a download responsive to the foregoing request should take only minutes to create.

18. Counsel for the Debtor responded on July 28, 2025, requesting a phone call discuss the production protocol and advised that "the earliest we can do is Wednesday morning" for such a call. *Id.*

19. In advance of that call, the undersigned circulated drafts of a joint stipulation on Monday July 28, 2025 and a draft confidentiality agreement formalizing the parties' obligations with respect to the Debtor's financial information on Tuesday, July 29, 2025. *Id.*

4

20. On Wednesday, July 30, 2025, counsel met as planned and counsel for Harbor Compliance circulated an updated confidentiality agreement. *Id.*

21. In the following days, counsel for Harbor Compliance has sent numerous follow-up emails but still, Debtor would not confirm its consent to the confidentiality agreement or produced the requested financial records. *See id.*

22. On Friday, August 1, 2025, the undersigned advised that Harbor Compliance intended to file this Motion on Monday, August 4, 2025, absent a response from the Debtor. *Id.*

23. After additional back and forth, on Monday August 4, 2025 at 5:29 p.m., counsel for the Debtor provided revised drafts of the joint stipulation and confidentiality agreement and conveyed the Debtor's agreement that "[i]f acceptable we will finalize the documents and get them signed." A copy of this email and the attached draft stipulation and confidentiality agreement are attached as **Exhibits 3, 4, and 5**, respectively.

24. Debtor's proposed revisions to the joint stipulation included, amongst other additions and edits, that "Debtor has agreed to produce a download of all of the Debtor's financial records that are produced by its bookkeeping system identified as XERO general ledger (.txt)." Ex. 4 at 2.

25. Counsel for Harbor Compliance emailed at 9:45 a.m. the next day confirming that "we are good with your comment and you are authorized to append our e-signature and submit for court approval." Ex. 2.

26. After several inquiries from counsel for Harbor Compliance as to the status of the confidentiality agreement and stipulation, counsel for the Debtor responded on Wednesday, August 6, 2025 at 5:56 p.m. that their client was reneging on its agreement and "would be proposing additional redlines" *to its own revisions* to address concerns with "the number of

5

individuals who will have access" to the promised information and the strength of the confidentiality protections previously agreed upon. *Id.*

27. Despite Harbor Compliance's objection to the Debtor's about-face stance, counsel for the Debtor provided revised drafts of the joint stipulation and confidentiality agreement on Thursday, August 7, 2025 at 4:07 p.m. with changes that were not only substantive, but were unreasonable, unworkable, and wholly unrelated to the Debtor's stated concern with limiting access to the promised information. A copy of this email and the attached draft stipulation and confidentiality agreement are attached as **Exhibits 6, 7, and 8**, respectively.

28. The undersigned is mindful of the Court's calendar and has made every conceivable effort to resolve this issue without the need for motion practice prior to Your Honor's upcoming absence. But based on the scheduling delays the Court advised of on July 24, 2025, the timing of the Debtor's delays threaten to upend Harbor Compliance's efforts to simply lock down a prompt hearing date on its Disclosure Statement upon Your Honor's return.[1]

29. Relatedly, counsel for Harbor Compliance previously requested that the Debtor provide email addresses for all foreign creditors and interest holders, so Harbor Compliance could supplement notice of its upcoming disclosure statement and Plan. See email attached as **Exhibit 9**. See also Federal Rule of Bankruptcy Procedure 2004(p)(1) ("At the request of the United States trustee or a party in interest, or on its own, the court may find that a notice mailed to a creditor with a foreign address within the time these rules prescribe would not give the creditor reasonable notice. The court may then order that the notice be supplemented with notice by other means or that the time prescribed for the notice by mail be extended.").

---

[1] Harbor Compliance notes that both owners of the Debtor, Mark Milastsivy and Fillipe Senna, joined the status conference on July 24, 2025. See July 24, 2025 Hearing Tr. at 4:14-16.

30. Counsel for the Debtor has advised that its client will provide the requested email list by "end of business" today, Friday August 8, 2025. Exhibit 2.

31. Understandably, Harbor Compliance has little faith that the Debtor will honor this promise on their own and asks the Court to compel the Debtor to do so.

32. Harbor Compliance now asks to this Court to order the Debtor to produce the documents and information it seeks via Federal Rule of Bankruptcy Procedure 2004. See Proposed Order attached as **Exhibit 1**.

## RELIEF REQUESTED AND BASIS FOR RELIEF

33. Federal Rule of Bankruptcy Procedure 2004 permits any party in interest to a bankruptcy case to obtain discovery from any entity on motion.

34. The discovery sought by Harbor Compliance from the Debtor is squarely related to Debtor's financial condition and Harbor Compliance's efforts to finalize its proposed plan of reorganization. *See* Exhibit 1.

35. Harbor Compliance sought the Debtor's voluntary participation in producing the documents and information responsive to its discovery requests.

36. The parties reached an agreement on the protocol for Debtor's production of such documents and information pursuant to the revised stipulation and confidentiality agreement sent by counsel for Debtor on August 4, 2025 at 5:29 p.m. See Exhibits 3-5. *See also In re Lehman Brothers Holdings Inc.*, No. Civ. A. No. 17-03424(DLC), 2017 WL 3278933 (S.D.N.Y. Aug. 2, 2017) (affirming this Court's enforcement of a settlement agreement against party who refused to agreement after their proposed edits were accepted by the opposing party), *aff'd*, 739 Fed. Appx. 55 (2d Cir. 2018)(unpublished).

7

37. It is necessary for, and Harbor Compliance is entitled to, the production of documents and information from the Debtor pursuant to the protocol agreed to by the parties.

**WHEREFORE**, for the reasons set forth herein, Harbor Compliance respectfully requests that the Court grant its Motion for a Rule 2004 Order and enter an order substantially in the form attached hereto as **Exhibit 1** compelling the Debtor to produce the documents and information as promised by no later than 5:00 p.m. on Friday, August 8, 2025.

Respectfully submitted,

**ROYER COOPER COHEN BRAUNFELD LLC**

Date: August 8, 2025

By: */s/ Marc Skapof*
Marc Hirschfield, Esquire
1120 Avenue of the Americas, 4th Floor
New York, New York 10036-6700
T: (212) 994-0452; F: (484) 362-2630
E: mhirschfield@rccblaw.com
Marc Skapof, Esquire
T: (212) 994-0452; F: (484) 362-2630
Email: mskapof@rccblaw.com

Matthew Faranda-Diedrich, Esquire*
Three Logan Square
1717 Arch Street, 47th Floor
Philadelphia, PA 19103
T: (215) 839-1000; F: (484) 362-2630
Email: mfd@rccblaw.com
Admitted *Pro Hac Vice*

*Attorneys for Creditor, Harbor Business Compliance Corporation*