# **EXHIBIT 8**

**CONFIDENTIALITY AGREEMENT**

This Confidentiality Agreement, (the "**Agreement**") dated August 7 5, 2025 (the "**Effective Date**"),  is entered into by and between Harbor Business Compliance Corporation, a Pennsylvania corporation doing business as Harbor Compliance (the "**Company**") of 1830 Colonial Village Lane Lancaster PA, 17601,  and Firstbase.io, Inc. of 425 Broadway, 3rd Floor, New York New York, 10013 ("**Firstbase**").

Background. The Company and Firstbase (collectively, the "**Parties**") intend to engage in discussions and negotiations concerning Firstbase's production of certain historic financial information in relation to Firstbase's bankruptcy, *In re Firstbase.io, Inc.*, Case No. 24-11647-lgb currently pending in the United States Bankruptcy Court for the Southern District of New York (the "**Chapter 11 Case**"). In the course of such discussions and negotiations and in the course of any such document production, it is anticipated that Firstbase will disclose or deliver to Harbor Compliance and to the Harbor Compliance's financial advisor, external council, or other professional party directly involved in assisting Harbor Compliance with evaluating and potentially funding the Harbor Compliance Plan (collectively "Representatives"), provided that such party is bound by written confidentiality obligations no less restrictive than those set forth in this Agreement. For the avoidance of doubt, Harbor Compliance's directors, officers, employees, agents, in-house council or other parties whose exposure to Firstbase's confidential and personally identifiable information can harm Firstbase's business prospects shall not be considered Representatives for purposes of this Agreement. The disclosure is for the sole purpose of Harbor Compliance preparing its own plan of reorganization of the Debtor (the "Harbor Compliance Plan").directors, officers, employees, agents or advisors (including, without limitation, attorneys, accountants, consultants, bankers, financial advisors and members of advisory boards), each being bound by written or professional  obligations of confidentiality at least as restrictive as those set forth in this Agreement (collectively, "**Representatives**") certain confidential or proprietary information for the purposes of enabling Harbor  Compliance to formulate its proposed plan of reorganization of Firstbase in the Chapter 11 Case and to  perform its obligations and exercise its rights as a creditor in the Chapter 11 Case (the "**Purposes**"). The parties have entered into this Agreement in order to assure the confidentiality of such trade secrets and confidential or proprietary information in accordance with the terms of this Agreement. As used in this  Agreement, the party disclosing Confidential Information (as defined below) is referred to as the  "**Disclosing Party**"; the party receiving such Confidential Information is referred to as the "**Recipient**".

Disclosure Tracking. Upon written request by Firstbase, the Company shall, within seven (7) calendar days, provide a complete list of all individuals and entities with whom any Confidential Information (as defined below) produced pursuant to this Agreement has been shared, including but not limited to each Representative. For each such person or entity, the Company shall also provide a copy of the signed confidentiality agreement or other written obligation by which such person or entity is bound, as required under this Agreement. The Company's obligation to provide such information shall survive any termination of this Agreement and shall apply to all disclosures made during the term of this Agreement.

Notwithstanding the foregoing obligations of confidentiality, any disclosures made by a Disclosing Party hereunder (which will be delivered to the Recipient's attorneys) shall only be shared with those Representatives necessary to accomplish the Harbor Compliance PlanPurposes.

Confidential Information. As used in this Agreement, the term "**Confidential Information**" means any and all of the information (whether written, oral, visual, in electronic or computer readable format or any other form) concerning the Disclosing Party, any of the Disclosing Party's affiliates or the Purposes, however documented or communicated, that has been or may hereafter be disclosed or made available on or after the date hereof in connection with preparing the Harbor Compliance Plan Purposesto Recipient or its Representatives by the Disclosing Party or by any of its Representatives. In addition, the term

Confidential Information shall be deemed to include but not be limited to: any notes, analyses, compilations, studies, interpretations, memoranda, client lists, marketing materials, operational insights, or other documents prepared by Recipient which contain or reflect upon, in whole or in part, any Confidential Information furnished to the Recipient.

"**Confidential Information**" does not include any information that: (a) is or becomes generally available to the public other than as a result of Recipient's or its Representatives' breach of this Agreement; (b) is obtained by Recipient or its Representatives on a non-confidential basis from a third party that, to Recipient's knowledge, was not legally or contractually restricted from disclosing such information; (c) Recipient establishes by documentary evidence, was in Recipient's or its Representatives' possession prior to Disclosing Party's disclosure hereunder, and is not subject to any other confidentiality agreement; or (d) Recipient establishes by documentary evidence, was or is independently developed by Recipient or its Representatives without using any Confidential Information.

Scope of Agreement. This Agreement shall apply to all Confidential Information disclosed between the Parties in connection with the ~~for the~~ Harbor Compliance Plan ~~Purposes~~ whether before, on, or after the date of this Agreement. For the avoidance of doubt, this Agreement does not apply to any document productions by Firstbase pursuant to Rule 2004 in the Chapter 11 Case prior to the date of this Agreement, which productions are instead governed by the terms of such prior productions.

Use of Confidential Information. Recipient agrees that Recipient and its Representatives shall only use the Confidential Information ~~for the Purposes~~ in connection with the Harbor Compliance Plan as outlined in this Agreement and not for any other purpose without the prior written consent of the Disclosing Party. Recipient agrees that Recipient and its Representatives must keep secret and shall never, without the prior written consent of the Disclosing Party, directly or indirectly, disclose, publish, divulge, furnish, or use Confidential Information for any other purpose than that stated in this Agreement.

Reasonable care. Recipient agrees that Recipient and its Representatives shall protect the confidentiality of the Confidential Information with the same degree of care used to protect their own information of a confidential nature, which in no event shall be less than a reasonable degree of care.

Ownership of Confidential Information. Recipient acknowledges (i) that the Confidential Information is the property of the Disclosing Party; and (ii) that the Recipient shall not receive any right, title, interest, or license to use the Disclosing Party's Confidential Information.

Return of Confidential Information. The Recipient shall, upon the written request of the Disclosing Party, (i) at the option of the Disclosing Party, destroy or return to the Disclosing Party all Confidential Information Recipient and its Representatives received from the Disclosing Party; and (ii) destroy any notes, reports, or other documents prepared by the Recipient or its Representatives which contain or interpret Confidential Information provided by the Disclosing Party including electronic copies. Within ten business days of Disclosing Party's written request mentioned above, Recipient shall provide a written certification from an authorized person certifying that such destruction and/or return has occurred.

Limitations on Obligations in Case of Legal Proceedings. If Recipient or any of its Representatives is required by law, regulation or legal or regulatory process to make any disclosure that is prohibited or otherwise constrained by this Agreement, Recipient or such Representative, as the case may be, will provide the Disclosing Party with prompt written notice thereof, together with a copy of the material proposed to be disclosed, to the extent practicable and legally permissible, so that the Disclosing Party may (i) seek an appropriate protective order or other appropriate relief (and Recipient shall use reasonable efforts to cooperate with the Disclosing Party, at the Disclosing Party's expense, to obtain such order or relief) or, if the Disclosing Party so elects (in its sole discretion), (ii) waive compliance with the provisions

of this Agreement. In the absence of such protective order, relief or waiver, Recipient or such Representative is permitted (after a reasonable amount of time has passed to allow the Disclosing Party the opportunity to seek such protective order or relief or consider such waiver) to disclose that portion (and only that portion) of the Confidential Information that it is legally required, based upon reasonable advice of counsel, to disclose; *provided*, *however*, that (x) Recipient or such Representative, as the case may be, must use all reasonable efforts to obtain assurance that confidential treatment will be accorded to any Confidential Information so disclosed and (y) Recipient shall consider in good faith any suggestions from the Disclosing Party concerning the scope and nature of the information to be disclosed.

<u>Term and Termination.</u> The term of this Agreement is for a period of five years from the Effective Date, however, either party may terminate the Agreement at any time by written notice to the other party. The obligations of the Recipient under this Agreement in respect of Confidential Information disclosed during the term hereof will survive any termination or expiry of this Agreement, unless and until such time as Harbor Compliance becomes a majority interest owner of Firstbase pursuant to a confirmed plan of reorganization in the Chapter 11 Case; *provided however*, Recipient's obligations with respect to any Confidential Information that is a trade secret will survive indefinitely, or at least for as long as such information qualifies as a trade secret under applicable law.

<u>Governing Law; Forum; Equitable Relief.</u> Any dispute arising out of or related to this Agreement shall be construed in accordance with law of the State of New York, without regard to conflict or choice of law principles. Any action or proceeding seeking to enforce any provision of, or based upon any right, under, or arising out of, this Agreement shall be brought against either of the Parties exclusively in the Chapter 11 Case in the United States Bankruptcy Court for the Southern District of New York, or if that court should ever lacks jurisdiction, in the United States District Court for the Southern District of New York. Each of the Parties hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. Because an award of money damages may be inadequate for any breach of this Agreement, and any such breach may cause the Parties irreparable harm, Recipient agrees that, in the event of any breach or threatened breach of this Agreement by Recipient or any of its Representatives, the Disclosing Party will also be entitled, without being required to prove actual damages or to post a bond or other security, to seek equitable relief, including injunctive relief and specific performance. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement, but shall be in addition to all other remedies available to the Disclosing Company at law or in equity.

<u>Entire Agreement.</u> This Agreement supersedes all prior agreements, written or oral, between the parties relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged, in whole or in part, except by an agreement in writing signed by the parties.

<u>Successors and Assigns.</u> This Agreement will be binding upon and inure to the benefit of the respective Parties and their respective heirs, successors, and assigns.

<u>Severability.</u> If any provision of this Agreement is held invalid or unenforceable, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

<u>No implied waiver.</u> The failure or neglect of the Disclosing Party to enforce any of the rights under this Agreement will not constitute a waiver of the Disclosing Party's rights under the Agreement.

Headings. The headings of this Agreement are meant only to organize the agreement and should not be considered operational components of the Agreement.

No Waiver. Nothing in ~~is~~ this Agreement shall be construed as a waiver by either the Company or Firstbase of any right to object to discovery sought in the Chapter 11 Case.

Bankruptcy Court Approval. Firstbase is authorized to take all actions necessary in its business judgment to obtain approval of this Agreement in the Chapter 11 Case in as expedited manner as is possible. The Parties agree to use their best efforts to accomplish the expeditious approval of this Agreement.