**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Firstbase.io, Inc. | : | Case No. 24-11647(LGB) |
| | : | |
| Debtor. | : | |
| | : | |

**DECLARATION OF DAVID GREENBLATT
OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC
IN SUPPORT OF THE CHAPTER 11 PLAN OF FIRSTBASE.IO, INC.
PROPOSED BY HARBOR BUSINESS COMPLIANCE CORPORATION**

I, David Greenblatt, declare, under penalty of perjury, that the following is true to the best of my knowledge, belief, and information:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration ("Declaration").

2. I am a Director at GlassRatner Advisory & Capital Group LLC ("GlassRatner") a financial services advisory firm located at 250 Park Avenue, 7th Floor, New York, NY 10177, among other places. GlassRatner is the financial advisor for Harbor Business Compliance Corporation ("Harbor Compliance" or "Plan Proponent") in connection with this chapter 11 case.

3. I support the *Chapter 11 Plan of Firstbase.io, Inc. Proposed by Harbor Business Compliance Corporation* [ECF No. 194-1] (as amended, supplemented, or modified from time to time, the "Plan").[1]

4. The Statements in this Declaration are, except where specifically noted, (i) based on my personal knowledge or opinion, experience, review of relevant documents, and information concerning Firstbase.io, Inc. (the "Debtor"); or (ii) based on information I received from Harbor

---

[1] Any capitalized term not defined herein shall have the meaning assigned to it in the Plan.

Compliance, the Debtor's representatives, or agents of GlassRatner working under my supervision, direction, or control.

5.  I understand that this Declaration is intended to be submitted in lieu of direct testimony and that I will be subject to cross-examination.

## Background and Qualifications

6.  GlassRatner is a nationally recognized financial advisory services firm with offices across North America and more than 200 professionals. GlassRatner is a leader in providing services to unsecured and secured creditors, debtors, acquirers, and other parties in interest involved with financially troubled companies both in and outside of bankruptcy. GlassRatner has been, and is, involved in many restructurings in the United States, both out of court and in chapter 11 cases. Since 2023, GlassRatner has been retained to provide services in, among other cases: *In re Praesum Healthcare Services, LLC*, Case No. 25-19335, (Bankr. S.D. Fla.), *In re Cinemaworld of Florida, Inc.*, Case No. 25-17693, (Bankr. S.D. Fla.), *In re The Roman Catholic Bishop of Fresno*, Case No. 25-12231, (Bankr. E.D. Cal.), *In re Global Concessions, Inc.*, Case No. 25-53640, (Bankr. N.D. Ga.), *In re DCA Outdoor, Inc.*, Case No. 25-50053, (Bankr. W.D. Mo.), *In re Rock Medical Center Group, LLC*, Case No. 24-81090, (Bankr. D. Neb.), *In re Senior Nannies Holdings, LLC*, Case No. 24-21367, (Bankr. S.D. Fla.), *In re Group Resources, Inc.*, Case No. 24-59729, (Bankr. N.D. Ga.), *In re Plaza Mariachi, LLC*, Case No. 24-02441, (Bankr. M.D. Tenn.), *In re The Roman Catholic Bishop of San Diego*, Case No. 24-02202, (Bankr. S.D. Cal.), *In re Fulcrum Loan Holdings, LLC*, Case No. 24-56114, (Bankr. N.D. Ga.), *In re Atlantic Neurosurgical Specialists, P.A.*, Case No. 24-15726, (Bankr. D. N.J.), *In re Synapse Financial Technologies Inc.*, Case No. 24-10646, (Bankr. C.D. Cal), *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326, (Bankr. E.D. Cal.), *In re Eye Care Leaders Portfolio Holdings LLC*, Case No. 24-80001,

(Bankr. N.D. Tex.), *In re Franciscan Friars of California, Inc.*, Case No. 23-41723, (Bankr. N.D. Cal.), *In re SBG Burger Opco LLC*, Case No. 23-04797, (Bankr. M.D. Fla.), *In re Bela Flor Nurseries*, Case No. 23-42469, (Bankr. N.D. Tex.), *In re The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564, (Bankr. N.D. Cal.), *In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113, (Bankr. N.D. Cal.), *In re Meridian Restaurants Unlimited*, Case No. 23-20731, (Bankr. D. Utah), and *In re Aruze Gaming America, Inc.*, Case No. 23-10356, (Bankr. D. Nev.).

7. I have worked as a financial advisor in the bankruptcy and restructuring space for over twenty years and have been a Director at GlassRatner for the last six years. I hold a Master of Accounting and a Master of Taxation from Nova Southeastern University. I am a licensed Certified Public Accountant in the State of Florida and a Certified Insolvency and Restructuring Advisor.

8. For more than two decades, I have worked with debtors, creditors' committees, and trustees in bankruptcy proceedings by providing expertise in financial models and projections, financial statement review and analysis, preference and fraudulent transfer litigation, and creating business plans for reorganization. My experience includes managing and assisting with both bankruptcy matters from inception to case closing as well as investigating preference payments, fraudulent transfers and financial statements. My chapter 11 experience includes the following cases, among others: *In re Peer Street, Inc. et.al,* Case No. 23-10815, (Bankr. D. Del.), *In re Spherature Investments, LLC et.al,* Case No. 20-42492, (Bankr. E.D. Texas), *In re Rochester Drug Co-Operative, Inc.,* Case No. 20-20230, (Bankr. W.D.N.Y.), *In re Hopedale Mining LLC,* Case No. 20-12043, (Bankr. S.D. Ohio), *In re The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564, (Bankr. N.D. Cal.), *In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-

3

10113, (Bankr. N.D. Cal.), *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326, (Bankr. E.D. Cal.).

9. In May 2025, Harbor Compliance engaged GlassRatner to serve as their financial advisor in the above-captioned chapter 11 case. In this role, GlassRatner has served as a financial advisor to Harbor Compliance in connection with the development, negotiation, and preparation of the Plan.

10. Since GlassRatner was retained, I personally have worked closely with Harbor Compliance and its legal counsel in connection with the proposed restructuring efforts, including the development, negotiation, preparation, and implementation of the Plan. During that time, I have acquired an understanding of the Debtor's financial condition, capital structure, and assets.

## Best Interests Test

11. I understand that, to satisfy the "best interests" test under section 1129(a)(7) of the Bankruptcy Code, a plan proponent must demonstrate that each holder of a claim or equity interest in an impaired class (a) has accepted the plan or (b) is receiving at least as much value under the plan as it would receive in a hypothetical chapter 7 liquidation of the debtor.

12. I understand that, in this case, of the Classes entitled to vote on the Plan, Classes 4 (Harbor Compliance Claim) and 5 (Convenience Class Claims) voted to accept the Plan. I understand that, of the Classes entitled to vote on the Plan, Class 3 (General Unsecured Claims) voted to reject the Plan. I also understand that Class 6 (Firstbase Equity Interests) were not entitled to vote on the Plan and deemed to reject the Plan. Therefore, the Plan Proponent must demonstrate that Classes 3 (General Unsecured Claims) and 6 (Firstbase Equity Interests) are receiving at least as much value under the Plan as in a hypothetical chapter 7 liquidation of the Debtor.

13. GlassRatner, with the assistance of the Plan Proponent, its representatives, and its advisors, performed hypothetical analyses that represent good faith estimates of what holders of such claims would recover in a hypothetical liquidation under chapter 7 of the Bankruptcy Code (as amended, supplemented, or modified from time to time, the "Liquidation Analysis"). Based on my involvement in the preparation of the Liquidation Analysis and my experience as a restructuring professional, it is my opinion that the methodology used to prepare the Liquidation Analysis is appropriate, and the assumptions and conclusions set forth therein are fair and reasonable under the circumstances.

14. The Liquidation Analysis relied upon the following assumptions, which are typical of a liquidation analysis in a restructuring case:

A. The Debtor's Chapter 11 Case is converted to a Chapter 7 liquidation on or about November 1, 2025 (the "Liquidation Date"). The Liquidation Date represents the approximate date the Plan is currently anticipated to become effective. On the Liquidation Date, it is assumed that the United States Trustee would appoint a Chapter 7 trustee (the "Chapter 7 Trustee") to oversee the Debtor's liquidation.

B. The liquidation begins on the Liquidation Date (the "Liquidation Period"). During such Liquidation Period, it is assumed that the Chapter 7 Trustee will have continued use of cash collateral and continue to wind-down and marshal the Debtor's assets. It is assumed that the Chapter 7 Trustee may retain certain former employees as consultants to assist the Chapter 7 Trustee in monetizing assets, reconciling claims, and the general wind-down of the Debtor's estate.

C. The Chapter 7 Trustee would retain legal and financial professionals to assist in the liquidation and wind-down of the Debtor's estate.

D. Any accrued Debtors professional fees at the time of the Chapter 7 conversion would be satisfied from the funds in the Debtors professional fee escrow account, and the Debtor's available cash.

E. There can be no assurances that the estimated recoveries outlined in this Liquidation Analysis may be achieved. An extended liquidation process may result in increased wind-down costs, which may negatively impact creditor recoveries.

F. The Plan reflects Professional Fees through the estimated Effective Date of November 1, 2025 based on the following treatments, net of any professional fee escrow balances:

   a. Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"): Based on approved First Interim Fee Application amounts and estimated amounts incurred based on the Debtor's Cash Collateral Budgets for the period May 1 through October 2025 (September and October reduced to approximately $4k based on available information). Quinn Emanuel filed their Second Interim Fee Application on October 8, 2025 in the amount of $801,700.74. I understand Harbor Compliance intends to file an objection to this fee application.

   b. Kirby Aisner & Curley LLP: Based on approved First Interim Fee Application amounts, filed but not approved Second Interim Fee Applications (June to August 2025), and amounts estimated in the Debtor's Cash Collateral Budgets for the period September and October 2025.

      c. Dilworth Paxson LLP: Based on approved First Interim Fee Application amounts, filed but not approved Second Interim Fee Applications (May to August 2025), and amounts estimated in the Debtor's Cash Collateral Budgets for the period September and October 2025.

15. The Liquidation Analysis relied upon the following documents:

    A. The Plan and Disclosure Statement;

    B. Monthly Operating Reports filed by the Debtor;

    C. Historical unaudited monthly financial statements of the Debtor;

    D. Cash collateral budgets and projections filed by the Debtor;

    E. As-filed professional fee applications;

    F. As-filed Statement of Financial Affairs and Schedules of Assets and Liabilities; and

    G. Claims register and filed proofs of claims.

16. I also relied upon discussions with the management team of Harbor Compliance regarding projected operating expenses, capital expenditures, and profit margins

17. The Liquidation Analysis is attached to the Plan Supplement as Exhibit E. As reflected therein, the liquidation of the Debtor's assets would result in gross proceeds of approximately $1.5 million that would be used to pay liquidation costs and then distributed to creditors. Subject to the assumptions and qualifications contained therein, the Liquidation Analysis establishes that all Holders of Claims in Class 3 (General Unsecured Claims) and Interests in Class 6 (Firstbase Equity Interests) will receive or retain property under the Plan valued, as of the Plan Effective Date, in an amount greater than or equal to the value of what they would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

18. This is based on several considerations, including: (i) the additional administrative claims generated by conversion to a chapter 7 case; (ii) the administrative costs of liquidation and associated delays with a chapter 7 liquidation; (iii) the 425 Broadway Lease; (iv) the New Equity Plan Trust Contribution; (v) the New Equity Capitalization Contribution; and (iv) the equitization of the Harbor Compliance Claim.

19. Based on the Liquidation Analysis, I have concluded that claimants in Class 3 (General Unsecured Claims) will receive greater value under the Plan than in a hypothetical chapter 7 liquidation. I have also concluded that a chapter 7 liquidation will not generate sufficient assets such that interests in Class 6 (Firstbase Equity Interests) would receive any proceeds in a liquidation scenario, and so Class 6 is receiving at least as much value under the Plan as it would receive in a hypothetical chapter 7 liquidation of the Debtor.

20. Subsequently, the Debtor filed its August Monthly Operating Report [ECF No. 245] in which it reports a lower cash balance than the balance included in the Liquidation Analysis. Therefore, there may be, at present, a shortfall of cash necessary for the Plan Trust to fund the recoveries outlined in the Liquidation Analysis. However, any cash shortfall on the effective date may be reduced by a decrease in the total amount of professional fees allowed by the court and/or an increase in the New Equity Plan Trust Contribution. To the extent a cash shortfall exists upon Confirmation and/or the Effective Date of the Plan, and which shortfall is mitigated through a decrease in the amount of allowed professional fees and/or an increase to the New Equity Plan Trust Contribution, the Liquidation Analysis remains valid.

21. For these reasons, I believe that section 1129(a)(7) of the Bankruptcy Code is satisfied.

**Feasibility**

22.     It is my understanding that section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is commonly referred to as the requirement that the plan be "feasible." Based on my involvement in the Plan Proponent's restructuring efforts and my discussions with the Plan Proponent and its advisors, I believe that confirmation of the Plan is highly unlikely to be followed by further financial reorganization.

23.     With input and guidance from the Plan Proponent, GlassRatner has prepared a cash flow projection ("Cash Flow Projection") which is attached to the Plan Supplement as Exhibit F. As reflected therein, the Debtor is currently administratively solvent and will remain able to fund its operations while making all Distributions required by the Plan. The Reorganized Debtor will be capitalized by the New Equity Capitalization Contribution, as laid out in the Plan, in order to ensure it has sufficient assets to operate post-Effective Date.

24.     In preparing the Cash Flow Projection, I relied upon the following assumptions, which are typical when projecting future cashflow in a restructuring case:

   A. Effective date of November 1, 2025;

   B. The business of the Reorganized Debtor continues consistent with historical operating results for revenue and expenses over the trailing 12-month period;

   C. Secured debt is paid in full before effective date;

   D. Professional fees are based on as-filed Fee Applications and the cash collateral budget, and are paid from escrowed cash and cash of the Debtor prior to the effective date;

   E. Lease payments continue based on the existing lease agreement; and

    F.   Google LLC ("Google") contract is assumed by the Reorganized Debtor and cure amount is paid over a two-month period.

25.   In preparing the Cash Flow Projection, I relied upon the following documents:

    A.   The Plan and Disclosure Statement;

    B.   Monthly Operating Reports filed by the Debtor;

    C.   Historical unaudited monthly financial statements of the Debtor;

    D.   Cash collateral budgets and projections filed by the Debtor; and

    E.   As-filed professional fee applications.

26.   I also relied upon discussions with the management team of Harbor Compliance regarding projected operating expenses, capital expenditures and profit margins

27.   Further, under the Plan, the Reorganized Debtor will become a majority-owned subsidiary of Harbor Compliance. I understand that the Holders of New Firstbase Equity Interests, including Harbor Compliance, will provide access to capital on a forward-looking basis which will ensure the Reorganized Debtor can meet its requirements for working capital and capital expenditures. Additionally, the officers and directors of Harbor Compliance, a business offering similar services to the Debtor, will serve as the officers and directors of the Reorganized Debtor, providing the Reorganized Debtor with experienced industry management and guidance.

28.   Based on the Cash Flow Projection and my understanding of the Debtor's business going forward, I do not believe that Confirmation of the Plan is likely to be followed by the liquidation or need for further financial reorganization of the Debtor, and therefore the Plan is feasible.

29.   For these reasons, I believe that section 1129(a)(11) of the Bankruptcy Code is satisfied.

**Claims**

30. For the Liquidation Analysis, I calculated the General Unsecured Claims ("GUC") pool using information provided by the Debtor in its filed Bankruptcy Statements and Schedules, the Debtor's Claims Register, and the actual Proofs of Claims filed with the Court. In its objection, the Debtor indicates a GUC pool of approximately $5,000,000.00 (excluding the Harbor Compliance Claim). *See* ECF No. 232 at 5. The objection of Novel Capital, Inc. ("Novel") makes the same assertion. *See* ECF No. 231 ¶ 12. In the Liquidation Analysis filed with the Plan, I have calculated the GUC pool to be approximately $4,000,000 (excluding the Harbor Compliance Claim). The difference between the two amounts is related to Claim # 15 – Graphene Ventures III, LP ("Graphene"). Graphene's claim for $1,577,260.27 contains $1,000,000 of Simple Agreement for Future Equity ("SAFE") claims (two separate $500,000 agreements) that was removed from the GUC pool in my claims analysis utilized for the Liquidation Analysis and the recovery analysis. Pursuant to both the Plan and the Debtor's plan [ECF No. 236], SAFE claims are to be treated as equity and not considered as GUC claims. The Debtor and Novel both failed to consider the $1,000,000 as SAFE claims and thus did not remove this amount from their GUC pool calculation.

31. I have also further analyzed the GUC pool after the submission of the Liquidation Analysis and have determined the following claims need to be removed from the GUC pool:

A. Claim Number 15 – Graphene – $1,577,260.27 – Upon further review of the Debtor's books and records, I determined that the Debtor booked the full amount of Graphene's claim as equity in its books and records and thus the Liquidating Trustee would ultimately object to this claim as being equity and not debt. As a result, this entire amount (not just the $1,000,000 SAFE amounts) should be removed from the GUC pool, a net impact of $577,260.27 to the overall GUC pool in the Liquidation Analysis.

B. Claim Number 19 – Google – $290,905.95 – Upon further review, I included the Google claim amount, which is being cured by the Reorganized Debtor as reflected in the Cash Flow Projection, in the GUC pool. Because the Google claim is being cured, it should be removed from the GUC pool, a net impact of $290,905.95 to the overall GUC pool in the Liquidation Analysis.

C. Claim Number 13 – Novel – $992,229.13 – Based on the Novel objection filed with the Court, Novel indicated that they would elect having equity in the Reorganized Debtor, thus waving their claim and further reducing the GUC pool by the full amount of their claim, a net impact of $992,229.13 to the overall GUC pool in the Liquidation Analysis.

27. In total, the above three claims would further reduce the overall GUC pool by $1,860,395.35 bringing the updated GUC pool amount to approximately $2.2 million (excluding the Harbor Compliance Claim).

28. When applying the updated GUC pool to the current Plan recovery analysis, the potential distribution goes from 20% to 37%.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 16, 2025  
New York, New York

/s/ David Greenblatt  
David Greenblatt  
Director  
GlassRatner Advisory & Capital Group LLC

**ROYER COOPER COHEN BRAUNFELD LLC**
**Marc Hirschfield, Esquire**
**1120 Avenue of the Americas, 4th Floor**
**New York, New York 10036-6700**
**Telephone: (212) 994-0451**
**Email: mhirschfield@rccblaw.com**
**Marc Skapof, Esquire**
**Telephone:(212) 994-0452**
**Email: mskapof@rccblaw.com**
**Matthew Faranda-Diedrich, Esquire\***
**Three Logan Square**
**1717 Arch Street, 47th Floor**
**Philadelphia, PA 19103**
**Telephone: (267) 546-0275**
**Email: mfd@rccblaw.com**
**Frank H. Toub, Esquire\*\***
**Telephone: (267) 546-0205**
**Email: ftoub@rccblaw.com**
**\*Admitted** *Pro Hac Vice*
**\*\****Pro Hac Vice* **Application Pending**
*Counsel to Creditor, Harbor Business Compliance Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Firstbase.io, Inc. | : | Case No. 24-11647(LGB) |
| | : | |
| Debtor. | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I, Marc Skapof, do here by affirm under penalty of perjury, that I am not a party to the action and am over 18 years of age and a partner at the law firm of Royer Cooper Cohen Braunfeld LLC, 1120 Avenue of the Americas, 4th Floor, New York, New York 10036.

On this date, I caused to be served a true and correct copy of the foregoing Declaration of David Greenblatt as follows:

*Via ECF*

Kirby Aisner & Curley LLP
Attn: Dawn Kirby, Esq.
700 Post Road, Suite 237
Scarsdale, New York 10583


U.S. Trustee
United States Trustee
Office of the United States Trustee - NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Date: October 16, 2025                                    */s/ Marc Skapof*
                                                          Marc Skapof, Esquire