## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------x

In re                                    Chapter 11

FIRSTBASE.IO, INC.,                 Case No. 24-11647 (lgb)

         Debtor.

-------------------------------------x

**AMENDED CHAPTER 11 PLAN OF FIRSTBASE.IO, INC.**
**PROPOSED BY HARBOR BUSINESS COMPLIANCE CORPORATION**

**Dated: ~~September 15~~October 22, 2025**

**ROYER COOPER COHEN BRAUNFELD LLC**
Marc Hirschfield, Esquire
1120 Avenue of the Americas, 4th Floor
New York, New York 10036-6700
Telephone: (212) 994-0451
 Email: mhirschfield@rccblaw.com
Marc Skapof, Esquire
Telephone: (212) 994-0452
Email: mskapof@rccblaw.com

Matthew Faranda-Diedrich, Esquire*
Three Logan Square
1717 Arch Street, 47th Floor
Philadelphia, PA 19103
Telephone: (215) 839-1000
Email: mfd@rccblaw.com
*Admitted *Pro Hac Vice*

*Counsel to Creditor, Harbor Business*
*Compliance Corporation*

# TABLE OF CONTENTS

ARTICLE I – DEFINED TERMS, COMPUTATION OF TIME AND GOVERNING LAW........3

ARTICLE II – TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS....................................................................................................................13

ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ............................................................................................................14

ARTICLE IV – PROVISIONS FOR IMPLEMENTATION OF PLAN .....................................18

ARTICLE V – ESTABLISHMENT AND ADMINISTRATION OF THE PLAN TRUST; APPOINTMENT OF THE PLAN TRUSTEE ......................................................................2122

ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES; REJECTION CLAIMS BAR DATE ...............................................................................................23

ARTICLE VII – PROVISIONS REGARDING DISTRIBUTIONS ...........................................24

ARTICLE VIII – PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS ....................................................................................28

ARTICLE IX – CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN ......................................................................................................2930

ARTICLE X – RELEASE, EXCULPATION, INJUNCTIVE AND RELATED PROVISIONS..30

ARTICLE XI – RETENTION AND PRESERVATION OF CAUSES OF ACTION...................33

ARTICLE XII – RETENTION OF JURISDICTION.................................................................34

ARTICLE XIII – MISCELLANEOUS PROVISIONS .............................................................35

## CHAPTER 11 PLAN

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "*Bankruptcy Code*"), Harbor Business Compliance Corporation ("*Harbor Compliance*" "*HBC*" or the "*Plan Proponent*"), a creditor and party-in-interest herein, hereby proposes the following chapter 11 plan for Firstbase.io, Inc. (the "*Debtor*"), as debtor and debtor-in-possession in the above-captioned chapter 11 case:

## ARTICLE I
## DEFINED TERMS, COMPUTATION OF TIME AND GOVERNING LAW

A.    *Computation of Time and Governing Law*

1.    In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the express provisions of any contract, instrument, release, note or other agreement or document entered into in connection herewith, including the Plan Documents, the laws of the State of New York, giving effect to the conflict of laws' principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan including, without limitation, any rule of law or procedure supplied by federal law as interpreted under the decisions of the State of New York (including the Bankruptcy Code and the Bankruptcy Rules).

B.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Expense*" means any cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) and 507(a)(2) or 507(b) of the Bankruptcy Code, including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business; (b) compensation for legal, financial advisory, accounting and other professional services, and reimbursement of expenses Allowed pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, including Professional Fees; (c) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

2.    "*Administrative Expense Bar Date*" has such meaning set forth in Article II.A.1 herein.

3

3.    "*Administrative Expense Request*" means a request for payment of an Administrative Expense.

4.    "*Affiliate*" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" shall mean all or a portion of a Claim against the Debtor or an Interest in the Debtor (a) that has been listed by the Debtor in the Schedules as liquidated in amount and not designated as one or more of "unliquidated" "disputed" or "contingent," and with respect to which no contrary proof of claim or proof of Interest has been filed on or before the applicable Bar Date, (b) as to which a proof of claim has been filed on or before the applicable Bar Date and no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which a proof of claim has been filed and as to which any objection has been settled, waived, withdrawn or denied by a Final Order, (d) that is allowed (i) by a Final Order or (ii) by a stipulation between the Holder of such Claim or Interest and the Plan Proponent prior to the Effective Date or the Plan Trustee on and after the Effective Date, or (e) that is deemed allowed under the Plan. For purposes of computing Distributions under the Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date.

6.    "*Ballot*" shall mean the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

7.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as in effect on the Confirmation Date or otherwise applicable to the Chapter 11 Case.

8.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

9.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Case, promulgated pursuant to 28 U.S.C. § 2075, and the General, Local and Chambers Rules of the Bankruptcy Court, as amended from time to time.

10.    "*Bar Date*" means, as applicable, the (i) Claims Bar Date, (ii) Governmental Unit Bar Date, or (iii) Administrative Expense Bar Date.

11.    "*Bar Date Order*" means that certain Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 40], entered by the Bankruptcy Court on November 26, 2024, establishing the Claims Bar Date and Governmental Unit Bar Date in the Chapter 11 Case.

12.    "*Business Day*" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which commercial banks in New York are required or are authorized to close by law or executive order.

13.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

14.    "*Causes of Action*" means, without limitation, all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, judgments, third-party claims, counterclaims and cross-claims (including, but not limited to, all claims arising under state, federal or other non-bankruptcy law) of the Debtor or its Estate that are or may be pending or existing on the Effective Date, or which are based on any facts or circumstances occurring on or before the Effective Date, against any Insiders, Holders of Claims, and/or any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the Effective Date, including without limitation any avoidance, recovery, subordination or other actions, Claims, causes of action, suits, judgments, third-party claims, counterclaims and cross-claims against Insiders, Holders of Claims, and/or any other Entities under chapter 5 of the Bankruptcy Code.

15.    "*Chapter 11 Case*" means the chapter 11 case styled *In re Firstbase.io, Inc*., Chapter 11 Case No. 24-11647 (lgb), pending in the Bankruptcy Court.

16.    "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

17.    "*Claims Bar Date*" means January 16, 2024, at 5:00 p.m. (prevailing Eastern time) with respect to non-Governmental Units and March 24, 2024, at 5:00 p.m. (prevailing Eastern time) with respect to Governmental Units, as established by the Bankruptcy Court in the Bar Date Order, by which all such Creditors and Governmental Units were required to have filed Proofs of Claim.

18.    "*Claims Objection Deadline*" shall mean one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; provided, however, that the Plan Trustee may seek extensions of this date from the Bankruptcy Court at any time before the expiration of the one hundred eighty (180) day period.

19.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III herein.

20.    "*Clearco Secured Claim*" means the Allowed Secured Claim of CFT Clear Finance Technology Corp. and classified in Class 1 of the Plan.

21.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Case.

22.    "*Confirmation Date*" means the date of Confirmation.

23.     "*Confirmation Hearing*" means the hearing(s) at which the Bankruptcy Court considers entry of the Confirmation Order.

24.     "*Confirmation Objection Deadline*" shall mean the date and time established by the Bankruptcy Court by which objections to the Confirmation of the Plan must be filed on the docket of the Chapter 11 Case and served upon the parties in interest.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "*Consummation*" shall mean the occurrence of the Effective Date.

27.     "*Contingent*" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

28.     "*Convenience Class Claims*" means any Allowed General Unsecured Claim (a) in an amount equal to or less than $5,000, or (b) in an amount greater than $5,000 if the Holder of such Allowed General Unsecured Claim affirmatively elects, on a timely submitted Ballot and in accordance with this Plan and the Disclosure Statement, to reduce such claim to $5,000 and with such claim treated as a Convenience Class Claim. Any such election shall be irrevocable upon the Effective Date. Any portion of an Allowed General Unsecured Claim that exceeds $5,000 and is designated as a Convenience Class Claim by the Holder of such claim shall be deemed waived and shall be extinguished upon the Effective Date.

29.     "*Creditor*" means a Holder of an Allowed Claim.

30.     "*Disallowed*" means any Claim, or any portion thereof, that has (i) has been disallowed by Final Order or settlement; (ii) is scheduled at zero or as contingent, disputed, or unliquidated on the Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including any claims bar date order, or otherwise deemed timely Filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law. "Disallow" and "Disallowance" shall have correlative meanings.

31.     "*Disclosure Statement*" means the Disclosure Statement for the Plan as it may be amended, supplemented or modified from time to time.

32.     "*Disputed*" means, with respect to any Claim, as of the date of determination: (a) listed on the Schedules as unliquidated, disputed or contingent, unless and until it is Allowed pursuant to a Final Order or deemed allowed under the Plan; (b) as to which the Debtor, the Plan Proponent or any other party-in-interest has Filed a timely objection or request for estimation in

accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn with prejudice, determined by a Final Order or deemed allowed under the Plan; (c) as to which the deadline for filing objections has not passed (whether or not an objection has been Filed), unless and to the extent such Claim or Equity Interest has been Allowed pursuant to a Final Order or deemed allowed under the Plan; or (d) that is otherwise disputed by the Debtor, the Plan Proponent or any other party-in-interest, or is subject to any right of setoff or recoupment, or the Holder thereof is subject to any Claim or cause of action, in accordance with applicable law, which dispute, right of setoff or recoupment, Claim or cause of action, has not been withdrawn or determined in favor of such Holder by a Final Order or otherwise resolved or allowed pursuant to the Plan.

33.    "*Distribution Agent*" shall mean the Plan Trustee; provided, however, that the Plan Trustee may, in its discretion, retain a third party to act as Distribution Agent.

34.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, (b) all conditions specified in Article IX.B herein have been satisfied or waived pursuant to Article IX.C herein, and (c) the Plan Proponent files with the Bankruptcy Court a notice of the occurrence of the Effective Date.

35.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

36.    "*Equity Interest*" means the legal, equitable, contractual or other rights of any Entity with respect to any capital stock, membership interest or other ownership interest in the Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, subscribe for, or otherwise acquire or receive an ownership interest or other equity security in the Debtor. For the avoidance of doubt, the SAFE Interests issued by the Debtor are and shall be treated as Equity Interests under the Plan.

37.    "*Estate*" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

38.    "*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtor; and (ii) the Plan Proponent (including Related Parties of the Plan Proponent). For the avoidance of doubt, Former Directors and Officers shall not be Exculpated Parties.

39.    "*File*" or "*Filed*" means file or filed with the Bankruptcy Court in the Chapter 11 Case.

40.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

41.    "*Final Order*" means an order of the Bankruptcy Court: (i) as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, reconsideration or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order has been affirmed by the highest court to which such order was appealed

or from which certiorari was sought, reargument, reconsideration or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired; provided, however, that the possibility of a motion pursuant to Rule 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule being Filed with respect to such order shall not cause such order to be deemed a non-Final Order.

42.     "*Firstbase Equity Interests*" means the Equity Interests of the Debtor, which Equity Interests shall be cancelled under the Plan.

43.     "*Former Directors and Officers*" means any and all directors, officers, members and/or managers of the Debtor prior to the Effective Date, including, for the avoidance of doubt, Mark Milastsivy and Filipe Senna.

44.     "*General Unsecured Claim*" means any Claim other than an Administrative Expense, Secured Claim, Priority Tax Claim, Priority Non-Tax Claim or Convenience Class Claim.

45.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

46.     "*Governmental Unit Bar Date*" means April 10, 2024, at 5:00 p.m. (prevailing Eastern time), which is the deadline established by the Bankruptcy Court in the Bar Date Order by which Governmental Units are required to have filed Proofs of Claim.

47.     "*Harbor Compliance Claim*" means the General Unsecured Claim of the Plan Proponent, which claim shall be deemed Allowed herein, in the amount of $20,164,083.11 and is classified in Class 4 of the Plan.

48.     "*Holder*" means the Entity holding the beneficial interest in a Claim, Equity Interest, Administrative Expense or right to distributions from the Debtor.

49.     "*Impaired*" means, with respect to any Class, impaired as defined in section 1124 of the Bankruptcy Code.

50.     "*Insider*" means an insider as defined in section 101(31) of the Bankruptcy Code.

51.     "*Interests*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

52.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

53.      *"New Equity Capitalization Contribution"* means an equity contribution from the Holders of the New Firstbase Equity Interests, which is to be made upon the occurrence of the Effective Date to capitalize the Reorganized Debtor in the amount of $500,000. The New Equity Capitalization Contribution will be paid by the Holders of the New Firstbase Equity Interests in the proportion that such Holder's interest in the New Firstbase Equity Interests bears to the aggregate amount of New Firstbase Equity Interests.

54.      *"New Equity Plan Trust Contribution"* means (i) an equity contribution by the Holders of the New Firstbase Equity Interest to the Plan Trust of up to $300,000 in Cash and (ii) the Plan Proponent Plan Trust Contribution to, inter alia, fund distributions to Holders of Allowed Claims against the Debtor and otherwise fund the Plan Trust. The amount of New Equity Plan Trust Contribution under subpart (i) of this definition will be paid by the Holders of the New Firstbase Equity Interests in the proportion that such Holder's interest in the New Firstbase Equity Interests bears to the aggregate amount of New Firstbase Equity Interests.

55.      *"New Firstbase Equity Interests"* means the equity interests to be issued by the Reorganized Debtor to the Plan Proponent and any other Holder of an Allowed General Unsecured Claim electing to receive such equity interests under the Plan.

56.      *"Novel Claim"* means the Claim of Novel Growth Partners California Investments, LLC filed in the amount of $992,229.13 as a Secured Claim by Novel Growth Partners California Investments, LLC but for which no UCC-1 financing statement perfecting a lien in any the Debtor's assets was filed. Under the Plan, the Novel Claim shall be deemed to be, and treated as, a General Unsecured Claim and classified in Class 3.

57.      *"Paid in Full*," *"Payment in Full*," or *"Pay in Full"* shall mean, with respect to an Allowed Claim, payment in Cash or other consideration in an aggregate amount equal to the Allowed amount thereof. With respect to Allowed Secured, Priority Tax and Priority Non-Tax Claims, *"Paid in Full*," *"Payment in Full*," or *"Pay in Full"* shall include interest (if any) under the contract rate for such Allowed Claim so as to render such claim Unimpaired under the Plan.

58.      *"Person"* shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

59.      *"Petition Date"* means September 25, 2024.

60.      *"Plan"* means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

61.      *"Plan Documents"* means any agreements, documents and instruments executed in connection with the Restructuring.

62.      *"Plan Proponent"* means Harbor Business Compliance Corporation.

63.   *"Plan Proponent Plan Trust Contribution"* means an equity contribution by the Plan Proponent in Cash to the Plan Trust on or about the Effective Date in an amount equal to the Plan Trust Deficit.

64.   ~~63.~~ *"Plan Proponent Settlement"* means the agreement of the Plan Proponent, upon the Effective Date of the Plan, to dismiss with prejudice: (i) *Harbor Business Compliance Corporation v. Firstbase.io, Inc.*, Case No. 5:23-cv-0802 pending in the Eastern District of Pennsylvania in connection with the Third Circuit Court of Appeals' remand for a new trial to calculate the Plan Proponent's damages due to Debtor's trade secret misappropriation. *See Harbor Business Compliance Corporation v. Firstbase.io, Inc.*, Case No. 25-1278; (ii) the Plan Proponent's appeal styled *In re Firstbase.io, Inc. (Harbor Business Compliance Corporation v. Firstbase.io, Inc.)*, Case No. 1:25-cv-04717-LAK pending in the United States District Court for the Southern District of New York; and (iii) the Plan Proponent's adversary complaint styled *Harbor Business Compliance Corporation v. Firstbase.io, Inc. et al*, Case No. 25-01032-lgb pending in the United States Bankruptcy Court, Southern District of New York. In addition, as a component of the Plan Proponent Settlement, the Plan Proponent shall waive any right to payment from the Debtor under section 503(b)(3)(D) of the Bankruptcy Code.

65.   ~~64.~~ *"Plan Supplement"* means any supplement filed by the Debtor appending documents or information required by or described in the Plan.

66.   ~~65.~~ *"Plan Supplement Documents"* means the documents comprising the Plan Supplement.

67.   ~~66.~~ *"Plan Trustee"* means the trustee for the Plan Trust.

68.   ~~67.~~ *"Plan Trustee Agreement"* has the meaning assigned to it in the Plan Supplement.

69.   ~~68.~~ *"Plan Trust"* means the trust created by the Plan Trustee Agreement and to be administered by the Plan Trustee.

70.   ~~69.~~ *"Plan Trust Assets"* means, collectively, the New Equity Plan Trust Contribution, the Debtor's Cash on hand as of the Effective Date, the Debtor's Causes of Action, and any other property of the Debtor or its Estate designated as a "Plan Trust Asset" by the Plan Proponent.

71.   *"Plan Trust Deficit"* means the shortfall in Cash held by the Plan Trust on the Effective Date needed for the Plan Trust to fund the payment of (i) Allowed Administrative Expenses, (ii) Class 3 claims in an amount equal to three percent of the Allowed amount of such Class 3 claims, and (iii) the payment of Class 5 claims as set forth herein.

72.   ~~70.~~ *"Priority Non-Tax Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Administrative Expense. Priority Non-Tax Claims are classified in Class in 2 of the Plan.

73. 71. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

74. 72. "*Pro Rata*" means (i) with respect to a Class of Claims, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class and (ii) with respect to a Class of Equity Interests, the proportion that an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Equity Interests in such Class. Notwithstanding the foregoing, in connection with the issuance of New Firstbase Equity Interests to the Class 4 member (Plan Proponent) and to those members of Class 3 that elect to receive New Firstbase Equity Interests in lieu of a cash distribution under the Plan, "Pro Rata" shall mean the proportion that an Allowed Claim in both of Class 3 or Class 4 bears to the aggregate amount of Allowed Claims in Classes 3 and 4of the Class 4 member (Plan Proponent) plus those members of Class 3 that elect to receive New Firstbase Equity Interest.

75. 73. "*Professional*" means any Entity employed pursuant to a Final Order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

76. 74. "*Professional Fee Application*" means a request for the Bankruptcy Court to approve and allow Professional Fees.

77. 75. "*Professional Fees*" means any compensation for services rendered and reimbursement of expenses incurred (including, but not limited to, hourly, transaction and success fees) by Professionals in the Chapter 11 Case.

78. 76. "*Proof of Claim*" means a proof of claim as defined in Bankruptcy Rule 3001.

79. 77. "*Put Option*" means the option afforded to each Holder of an Allowed Class 3 General Unsecured Claim that elects to receive New Firstbase Equity Interests under the Plan to require the Plan Proponent to repurchase such New Firstbase Equity Interests in exchange for a Cash payment equal to three (3%) of the face amount of such Holder's Allowed General Unsecured Claim. The Put Option may be exercised at any time within one (1) year following the later of (i) the Effective Date or (ii) the date on which such Holder receives the New Firstbase Equity Interests on account of its Allowed General Unsecured Claim.

80. 78. "*Reinstated*" or "*Reinstatement*" means, with respect to a Claim or Interest, leaving unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder thereof, in accordance with section 1124(2) of the Bankruptcy Code. Reinstatement includes, where applicable, (a) the curing of any default that occurred before or after the Petition Date (other than a default of a kind specified in section 365(b)(2) or 1124(2)(D) of the Bankruptcy Code); (b) the reinstatement of the maturity of such Claim or Interest as it existed before any such default; (c) the compensation of the holder of such Claim or Interest for any damages incurred as a result of reasonable reliance on such default to the extent required by section 1124(2)(C) of the Bankruptcy Code; and (d) otherwise restoring the holder to its pre-

default rights under applicable law. For the avoidance of doubt, Reinstatement shall not require the payment of any penalty rate or default-rate interest, late fees, consequential damages, or other charges or amounts that would not be required to cure a default under applicable non-bankruptcy law or that are expressly disallowed by the Bankruptcy Code or order of the Bankruptcy Court.

81.    79. "*Related Parties*" means, with respect to an Entity, its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

82.    80. "*Released Party*" means each of the following in their capacity as such: (i) the Debtor; (ii) the Reorganized Debtor; (iii) the Debtor's Estate; (iv) the Plan Proponent; and (v) with respect to each of the foregoing Entities such Entity's Related Parties to the maximum extent permitted by law. Notwithstanding anything to the contrary herein, none of Mark Milastsivy, Felipe Senna or any other of the Debtor's Former Directors and Officers shall be Released Parties and, for the avoidance of doubt, all Causes of Action owned by the Debtor or the Debtor's Estate that may be asserted against such non-Released Parties are preserved under the Plan and shall be constitute Trust Assets on the Effective Date.

83.    81. "*Reorganized Debtor*" means the Debtor on and after the Effective Date, or any successor thereto, by merger, consolidation, or otherwise.

84.    82. "*Restructuring*" means the financial and operational restructuring of the Debtor, the principal terms of which are set forth in this Plan, the Plan Supplement and the Plan Documents.

85.    83. "*SAFE Interests"* means those Interests in the Debtor issued under one or more SAFE Agreements to investors in the Debtor.

86.    84. "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs that were filed by the Debtor on October 10, 2024, in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as they may be further amended and supplemented from time to time.

87.    85. "*Secured Claim*" means any Claim or portion of any Claim (a) reflected in the Schedules or upon a Proof of Claim as secured by a Lien on property of the Debtor or the Estate, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code as determined by Final Order, to the extent of the value of such interest as determined pursuant to

section 506(a) of the Bankruptcy Code, or (b) deemed secured under the Plan or by prior order of the Bankruptcy Court.

88.    ~~86.~~ "*Treasury Regulations*" means title 26 of the Code of Federal Regulations.

89.    ~~87.~~ "*U.S. Trustee*" means the United States Trustee for the Southern District of New York.

90.    ~~88.~~ "*Unimpaired*" means, with respect to any Class, not Impaired.

91.    ~~89.~~ "*Voting Agent*" means Royer Cooper Cohen Braunfeld LLC, Attn: Alexandra Pittinsky.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

A.    *Administrative Expenses*

**1.  Administrative Expense Bar Date; Treatment of Administrative Expense Claims**

To the extent not previously paid, all Administrative Expense Requests for Administrative Expense Claims arising on or after the Petition Date (other than with respect to Professional Fee Claims) and accruing through the Effective Date and not otherwise paid in the ordinary course of business shall be filed with the Bankruptcy Court by no later than thirty (30) days after the Effective Date (the "*Administrative Expense Bar Date*"), and objections (if any) to such Administrative Expense Requests must be filed no later than sixty (60) days after the Administrative Expense Bar Date. Any Holder of an Administrative Expense Claim arising on or after the Petition Date (other than Professional Fee Claims) who fails to file a timely Administrative Expense Request that is required to be filed on or before the Administrative Expense Bar Date: (a) shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim against the Debtor and the Debtor's Estate, (or filing a request for the allowance thereof), and the Debtor and the Debtor's Estate, shall be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim; and (b) such Holder shall not be permitted to participate in any distribution under the Plan on account of such Administrative Expense Claim.

To the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which an Administrative Expense Claim shall become Allowed (or as soon as reasonably practicable thereafter), the Debtor (or the Plan Trustee), in full and final satisfaction of such Administrative Expense Claim, will (i) pay to each Holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim, or (ii) satisfy and discharge such Allowed Administrative Expense Claim on such other terms and conditions as may be agreed between the Holder of such Allowed Administrative Expense Claim, on the one hand, and the Debtor (or the Plan Trustee) and the Plan Proponent, on the other hand.

### 2. Professional Fee Applications; Treatment of Professional Fees

Notwithstanding anything herein or in any prior order of the Bankruptcy Court to the contrary, all Professional Fee Applications for Professional Fees through the Effective Date, for Allowance on a final basis, shall be filed on or before the date that is sixty (60) days after the Effective Date.

To the extent not previously paid, Allowed Professional Fees will be paid in accordance with an order of the Bankruptcy Court allowing such Professional Fees.

B.      *Priority Tax Claims*

To the extent not previously paid, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Priority Tax Claim shall become Allowed (or as soon as reasonably practicable thereafter), the Debtor (or the Plan Trustee), in full and final satisfaction of such Priority Tax Claim, will (i) pay to each Holder of an Allowed Priority Tax Claim, in Cash, the full amount of such Allowed Priority Tax Claim, or (ii) satisfy and discharge such Allowed Priority Tax Claim on such other terms and conditions as may be agreed between the Holder of such Priority Tax Claim and the Debtor (or the Plan Trustee).

## ARTICLE III
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

A.      *Summary*

The categories listed below classify Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|
| Class 1 | Clearco Secured Claim | Unimpaired | None, deemed to accept |
| Class 2 | Priority Non-Tax Claims | Unimpaired | None, deemed to accept |
| Class 3 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 4 | Harbor Compliance Claim | Impaired | Entitled to vote |
| Class 5 | Convenience Class Claims | Impaired | Entitled to vote |

| Class 6 | Firstbase Equity Interests | Impaired | None, deemed to reject |

B.     *Classification, Treatment and Voting*

**1.     Class 1 Clearco Secured Claim**

(A)     *Classification*: Class 1 is comprised of the Clearco Secured Claim.

(B)     *Treatment*: The Clearco Secured Claim shall be deemed Allowed hereunder and either (i) Paid in Full in Cash on the Effective Date; (ii) Reinstated; or (iii) satisfied by agreement of the Plan Proponent and the Class 1 Creditor.

(C)     *Voting*: Class 1 is Unimpaired, and the Class 1 Creditor is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Class 1 Creditor is not entitled to vote to accept or reject the Plan.

**2.     Class 2 Priority Non-Tax Claims**

(A)     *Classification*: Class 2 is comprised of the Priority Non-Tax Claims.

(B)     *Treatment*: The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims. To the extent not previously paid, and except to the extent that a Holder of a Priority Non-Tax Claim agrees in writing with the Plan Proponent (or the Plan Trustee) to a less favorable treatment, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a Priority Non-Tax Claim shall become Allowed (or as soon as reasonably practicable thereafter), the Debtor (or the Plan Trustee), in full and final satisfaction of such Priority Non-Tax Claim, will (i) Pay in Full in Cash to each Holder of an Allowed Priority Non-Tax Claim, the Allowed amount of such Allowed Non-Priority Tax Claim, or (ii) satisfy and discharge such Allowed Non-Priority Tax Claim on such other terms and conditions as may be agreed between the Holder of such Allowed Priority Non-Tax Claim and the Debtor (or the Plan Trustee).

(C)     *Voting*: Class 2 is Unimpaired, and Class 2 Creditors are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Class 2 Creditors are not entitled to vote to accept or reject the Plan.

**3.     Class 3 General Unsecured Claims**

(A)     *Classification*: Class 3 is comprised of all General Unsecured Claims except for the Harbor Compliance Claim. Based on the prior cash collateral orders entered by the Bankruptcy Court that found, *inter alia*, that the Novel Claim was not a Secured Claim, the Novel Claim is deemed under the Plan to be a General Unsecured Claim and classified in Class 3.

(B)     *Treatment*: In full and final satisfaction, release and discharge of the Debtor's obligations with respect to General Unsecured Claims, and except to the extent that a Holder of a General Unsecured Claim agrees in writing with the Plan Proponent (or the Plan Trustee) to a less favorable treatment, on the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which a General Unsecured Claim shall become Allowed (or as soon as reasonably practicable thereafter), each Holder of an Allowed General Unsecured Claim in Class 3 shall receive, in full and complete settlement, satisfaction and discharge of such Allowed General Unsecured Claim, at such Holder's election, (x) its Pro Rata share of the Trust Assets on the terms and conditions of the Plan and the Plan Trust Agreement; or (y) its Pro Rata (*i.e.*, the proportion that an Allowed Claim in both of Class 3 or Class 4 bears to the aggregate amount of Allowed Claims in Classes 3 and 4) share of the New Firstbase Equity Interests. Any Holder of an Allowed General Unsecured Claim in Class 3 that elects to receive its Pro Rata share of the New Firstbase Equity Interests will be obligated to contribute its Pro Rata share of both the New Equity Capitalization Contribution and the New Equity Plan Trust Contribution. Any Holder of an Allowed General Unsecured Claim in Class 3 that returns an otherwise properly completed, executed, and timely returned Ballot, but (i) without making an election as to form of distribution, or (ii) electing both forms of distribution will be deemed to have elected the "Cash and Trust Assets on the terms and conditions of the Plan Trust Agreement" option on its Ballot. Each Holder of an Allowed General Unsecured Claim in an amount greater than $5,000 may affirmatively elect, on a timely submitted Ballot and in accordance with this Plan, to reduce such claim to $5,000 and such claim shall be treated as a Convenience Class Claim. Any such election shall be irrevocable upon the Effective Date. Any portion of an Allowed General Unsecured Claim that exceeds $5,000 and is designated as a Convenience Class Claim by the Holder of such claim shall be deemed waived and shall be extinguished upon the Effective Date

(C)     *Put Option*: Any Holder of an Allowed General Unsecured Claim in Class 3 that elects to receive New Firstbase Equity Interests pursuant to option (y) above shall also receive a Put Option (as defined in Article I) from the Plan Proponent with respect to such New Firstbase Equity Interests. The Put Option shall entitle such Holder, for a period of one (1) year following the later of the Effective Date or the date of distribution of such New Firstbase Equity Interests to the Holder, to require the Plan Proponent to repurchase all of such New Firstbase Equity Interests in exchange for a Cash payment equal to three percent (3%) of the face amount of such Holder's Allowed General Unsecured Claim, subject to the terms and conditions set forth in Article IV of the Plan.

(D)     *Shareholder Rights*: The New Firstbase Equity Interests to be issued to electing Holders of Allowed General Unsecured Claims under the Plan shall be subject to customary and typical minority and majority equity interest holder protections, including so-called 'Drag-Along' rights. 'Drag-Along Rights' shall permit a majority of equity interest holders to require minority equity interest holders to participate

in any sale of the Reorganized Debtor on the same terms and conditions. In addition, the New Firstbase Equity Interests shall be subject to a 'call option' right, allowing the Reorganized Debtor or a designated holder (or group of holders) of a majority of equity interests to repurchase shares from minority equity interest holders upon demand or under other customary triggering events, at a value that will be further specified in the Reorganized Debtor's governing documents, which will be included in the Plan Supplement.

(E)     *Voting*: Class 3 is Impaired, and Class 3 Creditors are entitled to vote to accept or reject the Plan.

**4.      Class 4 Harbor Compliance Claim**

(A)     *Classification*: Class 4 is comprised of the Harbor Compliance Claim. The Harbor Compliance Claim is separately classified from other General Unsecured Claims because, *inter alia*, Harbor Compliance is a judgment creditor of the Debtor and, in its capacity as Plan Proponent, has agreed to forego a Cash distribution under the Plan so as to transfer such value to the Debtor's other General Unsecured Creditors.

(B)     *Treatment*: In full and final satisfaction, release and discharge of the Debtor's obligations with respect to the Harbor Compliance Claim, on the Effective Date, Harbor Compliance shall receive one hundred percent (100%) of the New Firstbase Equity Interests subject to Pro Rata dilution by any Class 3 Creditor that elects to receive New Firstbase Equity Interests on account of its General Unsecured Claim.

(C)     *Voting*: Class 4 is Impaired and the Class 4 Creditor is entitled to vote to accept or reject the Plan.

**5.      Class 5 Convenience Class Claims**

(A)     *Classification:* Class 5 is comprised of all Allowed Convenience Class Claims.

(B)     *Treatment*: Each holder of an Allowed Convenience Class Claim shall receive on the Effective Date or as soon thereafter as practicable, in full and final satisfaction, compromise, settlement, release, and discharge of such Claim, Cash in an amount equal to the lesser of (i) the Allowed amount of such Claim or (ii) $5,000. Any portion of a General Unsecured Claim that exceeds $5,000 and is voluntarily classified by the holder as a Convenience Class Claim shall be deemed extinguished as of the Effective Date, and the Holder shall have no further right to recover any portion of such extinguished amount. Holders of Allowed Convenience Class Claims shall not be entitled to any further or additional distributions under the Plan other than that provided herein.

(C)     *Voting*: Class 5 is Impaired and Class 5 Creditors are entitled to vote to accept or reject the Plan.

6.        **Class 6 Firstbase Equity Interests**

(A)    *Classification*: Class 6 is comprised of the Firstbase Equity Interests.

(B)    *Treatment*: Upon the Effective Date, the Firstbase Equity Interests shall be deemed canceled, null, and void without any further action by the Debtor and the Holders of such Firstbase Equity Interests shall receive no distribution on account of the Firstbase Equity Interests. From and after the Effective Date, the Class 6 Equity Interest Holders shall have no rights or Claims on account of their equity interests in the Debtor against the Debtor, the Debtor's Estate, the Reorganized Debtor (and its successors and assigns), the Plan Trustee, or the Plan Trust.

(C)    *Voting*: Class 6 is Impaired, and Class 6 Interest Holders are conclusively deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Class 6 Interest Holders are not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## PROVISIONS FOR IMPLEMENTATION OF PLAN

A.    *Settlement*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided under the Plan, including the New Equity Plan Trust Contribution and the Plan Proponent Settlement, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.

B.    *Binding Effect*

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind the Debtor, the Reorganized Debtor, the Plan Trustee and all Holders of Claims and Equity Interests.

C.    *Sources of Consideration for Plan Distributions*

The Plan Proponent, the Holders of New Firstbase Equity Interests, and the Debtor shall fund distributions under the Plan with (i) the Debtor's Cash on hand as of the Effective Date; (ii) the New Equity Plan Trust Contribution; (iii) the Plan Proponent Settlement; and (iv) the transfer and assignment of the other Trust Assets to the Plan Trust. The New Equity Plan Trust Contribution will be funded in Pro Rata share by the Plan Proponent and Holders of Allowed General Unsecured Claims in Class 3 electing to take New Firstbase Equity Interests. The New Equity Plan Trust Contribution will be funded on or about the Effective Date. The Plan Proponent, in addition to making the New Equity Plan Trust Contribution, is additionally entering into the Plan Proponent Settlement to, in part, fund the Plan distributions, in excess of the contributions of the Holders of Allowed General Unsecured Claims in Class 3 electing to take New Firstbase Equity Interests.

D.    *Issuance of New Firstbase Equity Interests*

On the Effective Date, the Reorganized Debtor shall issue the New Firstbase Equity Interests to the Plan Proponent and to General Unsecured Creditors that elect to receive such interests under the Plan. The issuance of such equity shall be exempt from registration under section 1145 of the Bankruptcy Code or other applicable law state or federal law. The New Firstbase Equity Interests shall be subject to the terms and conditions set forth in the governing documents of the Reorganized Debtor and any shareholders' agreement included in the Plan Supplement. The New Firstbase Equity Interests issued under the Plan will be "restricted securities" and may be subject to limitations on transfer under applicable securities law. Further, the Reorganized Debtor will not be a reporting company under the Securities Exchange Act of 1934, and there will be no public market for the New Firstbase Equity Interests. Accordingly, creditors electing to receive the New Firstbase Equity Interests are urged to consult their own counsel regarding applicable transfer restrictions

E.    *Corporate Action by the Debtor*

Each of the matters provided for under the Plan involving any corporate action to be taken or required by the Debtor shall, as of the Effective Date, be deemed to be authorized and approved by the Debtor's shareholders, officers, and board of directors. Further, upon the Effective Date, the Debtor's officers and directors shall immediately be deemed to have tendered their resignations and shall no longer have any authority to act by, through or on behalf of the Debtor or the Reorganized Debtor.

F.    *Governance and Management of Reorganized Debtor*

On the Effective Date, the governance documents of the Reorganized Debtor, including its certificate of incorporation, bylaws, or similar governing documents, shall be amended or adopted to conform to the provisions of the Plan and the Bankruptcy Code. The initial board of directors and officers of the Reorganized Debtor shall be selected by the Plan Proponent and disclosed in the Plan Supplement. The Reorganized Debtor shall continue the business operations of the Debtor as a going concern and shall possess all corporate powers under applicable law necessary to carry out the Plan.

G.    *Cancellation of Firstbase Equity Interests*

On the Effective Date, all existing equity interests, including common and preferred stock and any SAFEs or convertible instruments issued by the Debtor, shall be deemed canceled, null, and void without any distribution or further action by the Debtor or the Holders of such interests.

H.    *Cancellation of Notes, Instruments, and Debentures*

On the Effective Date, except to the extent provided otherwise in the Plan, or the treatment provided under the Plan, any agreement, note, instrument, certificate or other document evidencing or creating any Claim against the Debtor shall be automatically cancelled and terminated and of

no further force and effect, without any further act or action and deemed surrendered without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor under the agreements, notes, instruments, certificates or other documents governing such Claims shall be discharged.

I.    *Revesting of Assets in the Reorganized Debtor*

On the Effective Date, except as otherwise provided in the Plan, the assets of the Debtor's Estate, including all tangible and intangible property, rights, claims, and causes of action (other than those transferred to the Plan Trust), shall revest in the Reorganized Debtor, free and clear of all liens, claims, encumbrances, charges, and interests, subject to the obligations set forth in the Plan. The Reorganized Debtor and any of its successors and assigns shall succeed to all of the Debtor's rights, title, and interests in and to such assets in accordance with sections 1141(b) and (c) of the Bankruptcy Code.

J.    *Access to Books and Records; Privilege*

Upon the occurrence of the Effective Date, the Debtor's books and records shall be transferred to Reorganized Debtor. The Plan Trustee shall be afforded access to the Debtor's financial books and records, emails, and other financial documents relating to the Debtor's business that are currently in the Debtor's possession, custody or control. The Plan Trustee shall also be granted all privileges of the Debtor, including but not limited to, the attorney-client privilege.

K.    *Initial Capitalization of the Reorganized Debtor*

Upon the occurrence of the Effective Date, the Reorganized Debtor will be capitalized by the New Equity Capitalization Contribution. The New Equity Capitalization Contribution is the equity contribution from the Holders of the New Firstbase Equity Interests, which is to be made upon the occurrence of the Effective Date to capitalize the Reorganized Debtor in the amount of $500,000. The New Equity Capitalization Contribution will be paid by the Holders of the New Firstbase Equity Interests in the proportion that such Holder's interest in the New Firstbase Equity Interests bears to the aggregate amount of New Firstbase Equity Interests to be issued by the Reorganized Debtor. The Plan Proponent, in addition to making its proportional share of the New Equity Capitalization Contribution, is additionally entering into the Plan Proponent Settlement to, in part, fund the initial capitalization of the Reorganized Debtor, in excess of the contributions of the Holders of Allowed General Unsecured Claims in Class 3 electing to take New Firstbase Equity Interests. The amount of the New Equity Capitalization Contribution will be $500,000. The One-Year Financial Projections of the Reorganized Debtor supporting the feasibility of the Plan as required by section 1129(a)(11) of the Bankruptcy Code are included as an exhibit to the Disclosure Statement. The Effective Date balance sheet of the Reorganized Debtor shall be included in the Plan Supplement.

After the Effective Date, the Reorganized Debtor will be wholly or majority owned by the Plan Proponent. The Plan Proponent is a successful, well-capitalized and well-managed business with annual revenues in excess of $39 million, adjusted EBITDA in excess of $15 million and

minimal debt service relative to the overall revenues and value of the company. Accordingly, for those Creditors who elect to receive distributions of New Firstbase Equity Interests in lieu of Cash on account of their Allowed claims, the financial condition of the Reorganized Debtor's parent provides reasonable assurance of the Plan's feasibility. Alternatively, because the New Equity Plan Trust Contribution to the Plan Trust is calculated to provide, in conjunction with the other Trust Assets, adequate funding to implement the Plan, fund the Plan Trust and provide for a Cash distribution to Holders of Allowed Claims, the financial condition of the Reorganized Debtor is not relevant to those Holders of Allowed General Unsecured Claims that elect to receive Cash distributions from the Trust. Put differently, the Plan is structured to shift the risk associated with the financial performance of the Reorganized Debtor from the General Unsecured Creditors that elect a Cash distribution to the Plan Proponent which does not have the option under the Plan to receive a Cash distribution on account of its Allowed claim and those Class 3 members that elect to receive New Firstbase Equity Interests on account of their respective Allowed Claims.

L.    *Put Option for Electing Class 3 Creditors*.

The Plan Proponent shall honor any Put Option duly exercised by a Holder of an Allowed Class 3 General Unsecured Claim and shall fund the repurchase of the applicable New Firstbase Equity Interests in accordance with the terms of the Plan and the Reorganized Debtor's governing documents. Any repurchase of New Firstbase Equity Interests pursuant to an exercised Put Option shall be paid in Cash and in a manner reasonably satisfactory to both the Plan Proponent and the electing Holder, including, without limitation, the execution of any documentation necessary to evidence and implement such repurchase. The Plan Proponent shall use its available Cash to satisfy the payment obligations arising from any Put Option that is exercised by a Holder of an Allowed Class 3 General Unsecured Claim.

For each Holder of an Allowed Class 3 General Unsecured Claim that exercises the Put Option, the aggregate New Equity Plan Trust Contribution shall be reduced, on a dollar-for-dollar basis, by an amount equal to three percent (3%) of the face amount of such Holder's Allowed General Unsecured Claim.

M.    *Implementation of Shareholder Rights for Electing Class 3 Creditors*

The New Firstbase Equity Interests to be issued to electing Holders of Allowed General Unsecured Claims under the Plan shall be subject to customary and typical minority and majority equity interest holder protections, including so-called 'Drag-Along' rights. 'Drag-Along Rights' shall permit a majority of equity interest holders to require minority equity interest holders to participate in a sale of the Reorganized Debtor on the same terms and conditions.

In addition, the New Firstbase Equity Interests shall be subject to a 'call option' right, allowing the Reorganized Debtor or a designated holder (or group of holders) of a majority of equity interests to repurchase shares from minority equity interest holders upon demand or under other customary triggering events, at a value that will be further specified in the Reorganized Debtor's governing documents, which will be included in the Plan Supplement.

**ARTICLE V**
**ESTABLISHMENT AND ADMINISTRATION OF THE**
**PLAN TRUST; APPOINTMENT OF THE PLAN TRUSTEE**

A.    *Establishment of the Plan Trust*

On the Effective Date, a trust (the "*Plan Trust*") shall be established pursuant to the Plan and the Plan Trust Agreement, the form of which shall be filed in the Plan Supplement and shall be in form and substance acceptable to the Plan Proponent. The Plan Trust shall be administered by a trustee (the "*Plan Trustee*") in accordance with the terms of the Plan, the Confirmation Order, and the Plan Trust Agreement.

B.    *The Plan Trust Assets*

On the Effective Date, the following assets shall vest in the Plan Trust, free and clear of all liens, claims, encumbrances, and interests (legal, equitable, or otherwise), except as otherwise provided in the Plan or the Confirmation Order (collectively, the "*Plan Trust Assets*"): (i) the New Equity Plan Trust Contribution; (ii) all Cash held by the Debtor on the Effective Date, net of amounts, if any, used to fund the Reorganized Debtor or pay for Plan implementation arising before the Effective Date; (iii) Causes of Action not otherwise released, waived or settled under the Plan; and (iv) any other property or assets designated by the Plan Proponent to be included in the Plan Trust prior to the Effective Date.

C.    *Purpose of the Plan Trust*

The Plan Trust shall be established for the purpose of (i) collecting, preserving, and monetizing the Plan Trust Assets; (ii) making distributions to holders of Allowed Claims in accordance with the terms of the Plan; (iii) objecting to, settling, or otherwise resolving Disputed Claims; (iv) pursuing or settling any Causes of Action on behalf of the Debtor's Estate; (v) paying fees incurred by the United States Trustee under 28 U.S.C. § 1930 and any applicable interest thereon; and (vi) performing all other matters and duties set forth in the Plan, the Confirmation Order, or the Plan Trust Agreement.

D.    *Appointment and Authority of the Plan Trustee*

On the Effective Date, the individual or entity designated in the Plan Supplement shall be appointed as the Plan Trustee and shall serve in such capacity in accordance with the terms of the Plan and the Plan Trust Agreement. The Plan Trustee shall act in a fiduciary capacity on behalf of the beneficiaries of the Plan Trust and shall be vested with the rights and powers set forth in the Plan, the Confirmation Order, and the Plan Trust Agreement, including, without limitation, the authority to: (i) receive and liquidate the Plan Trust Assets; (ii) make interim and final distributions to Holders of Allowed Claims as required under the Plan; (iii) reconcile, object to, settle, or otherwise resolve Disputed Claims; (iv) prosecute, settle, or abandon any retained Causes of Action; (v) engage and compensate attorneys, financial advisors, accountants, or other professionals as necessary to carry out the Plan Trustee's duties, without further order of the Bankruptcy Court; (vi) make all required payments of fees under 28 U.S.C. § 1930 to the U.S.

Trustee and file applicable reports; (vii) hold legal title to any Plan Trust Assets and take all actions necessary to preserve and protect such assets; (viii) take any and all actions necessary to implement the provisions of the Plan relating to the Plan Trust; and (ix) take such other actions as are reasonable and necessary to effectuate the purposes of the Plan Trust.

E.    *The Plan Trust Agreement*

The Plan Trust shall be governed by the Plan Trust Agreement, which shall be included in the Plan Supplement. The Plan Trust Agreement shall be consistent in all material respects with the terms of the Plan and the Confirmation Order, and shall set forth, among other things, the powers, duties, and responsibilities of the Plan Trustee, the procedures for distribution to beneficiaries, the terms for the disposition of the Plan Trust Assets, and the termination of the Plan Trust.

F.    *Tax Treatment of the Plan Trust*

The Plan Trust shall be treated as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for United States federal income tax purposes. All parties to the Plan Trust Agreement shall treat the transfer of the Plan Trust Assets to the Plan Trust as a transfer to the holders of Allowed Claims, followed by a deemed transfer by such holders to the Plan Trust.

G.    *Termination of the Plan Trust*

The Plan Trust shall terminate no later than five (5) years after the Effective Date, unless extended by order of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of liquidating the remaining Plan Trust Assets or resolving outstanding matters. Upon termination of the Plan Trust, any remaining Plan Trust Assets shall be distributed in accordance with the Plan and the Plan Trust Agreement, and the Plan Trustee shall take such actions as are necessary to wind down and dissolve the Plan Trust.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED
## LEASES; REJECTION CLAIMS BAR DATE

A.    *Schedule of Executory Contracts and Unexpired Leases; Cure Amounts*

The Schedule of Executory Contracts and Unexpired Leases is included as an exhibit to the Disclosure Statement. The Schedule of Executory Contracts and Unexpired Leases sets forth the amount due to cure any monetary default under each executory contract and unexpired lease.

B.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all executory contracts and unexpired leases of the Debtor that are not

listed on the Schedule of Assumed Executory Contracts and Unexpired Leases to be included in the Plan Supplement shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Effective Date. The Debtor shall be deemed to have rejected all executory contracts and unexpired leases not expressly scheduled in the Plan Supplement.

The listing of a contract or lease on the Schedule of Assumed Executory Contracts and Unexpired Leases does not constitute an admission by the Debtor, Plan Proponent, or Reorganized Debtor that such contract or lease is an executory contract or unexpired lease or that the Debtor, Plan Proponent, or Reorganized Debtor has any liability thereunder.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, in Cash, as set forth in the Schedule of Executory Contracts and Unexpired Leases, or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. Any such assumed executory contract or unexpired lease shall vest in the Reorganized Debtor on the Effective Date, free and clear of all Claims, Liens, and other interests of any kind or nature, except as otherwise provided for herein.

Objections to cure amounts must be filed and served by the Confirmation Objection Deadline, and the Bankruptcy Court shall resolve any disputes as to the amount of the cure payment required for assumption as promptly as practicable.

D.      *Rejection Claims and Bar Date*

Any counterparty to a contract or lease that is rejected under the Plan and that asserts a Claim arising from such rejection must file a Proof of Claim for damages arising from such rejection with the Bankruptcy Court no later than the Confirmation Objection Deadline. Any such Claims not filed within such time will be forever barred and unenforceable against the Debtor, the Reorganized Debtor, the Plan Proponent, and the Plan Trust as of the Effective Date. The Plan Proponent and, from and after the Effective Date, the Plan Trustee shall have the exclusive authority to object to, allow, disallow, settle, or otherwise resolve any Claims arising from the rejection of executory contracts and unexpired leases under the Plan.

**ARTICLE VII**
**PROVISIONS REGARDING DISTRIBUTIONS**

A.      *Distributions*

All distributions under the Plan shall be made by the Plan Trustee.

B.      *Plan Distribution Reserve*

The Debtor and the Plan Proponent shall fund, and the Plan Trustee shall establish and maintain, a reserve account (the "*Plan Distribution Reserve*") sufficient to enable it to make all distributions hereunder that are required to be made on the Effective Date.

C.    *Disputed Claims Reserve*

From and after the Effective Date, and until such time as all Disputed Claims have been compromised, settled or determined by Final Order, the Plan Trustee shall establish and maintain a reserve account, which account shall be funded with Cash and New Firstbase Equity Interests on or before the Effective Date by the Debtor and the Plan Proponent (the "*Disputed Claims Reserve*") necessary to ensure that each Holder of a Disputed Claim shall receive payment of its Allowed amount in accordance with the provisions of the Plan in the event such Claim is Allowed in the maximum amount claimed.

D.    *Manner of Distribution under Plan*

Any distribution in Cash to be issued under the Plan shall be made in a manner to be determined by the Plan Trustee, which may include, by check drawn on a domestic bank or by wire transfer. Any fees, costs or other expenses associated with the distribution by wire transfer to any Holder shall be deducted from and paid out of such Holder's distribution. Any distribution in New Firstbase Equity Interests to be issued by the Plan Trustee shall be made in a manner reasonably acceptable to the Plan Trustee, the Creditor receiving such interests and the Reorganized Debtor.

E.    *Delivery of Distributions*

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of record of Allowed Claims shall be made at the address of each such Holder set forth on the Debtor's books and records unless superseded by the address set forth on Proofs of Claim filed by any such Holders. The Plan Trustee shall be permitted, in its discretion, to withhold distributions until it shall have received a tax identification number and such other tax withholding forms as it may reasonably require to comply with applicable federal, state, or local laws. In the event that any such tax information is not supplied within one month following a written request for such information, then that Holder of an Allowed Claim shall have that claim discharged and shall be forever barred from asserting such Claim against the Debtor.

F.    *Undeliverable Distributions*

1.    **Holding of Undeliverable Distributions**

If any distribution to the Holder of an Allowed Claim under the Plan is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Plan Trustee is notified in writing of such Holder's then-current address. Any Holder ultimately receiving a distribution that was initially returned as undeliverable shall not be entitled to any

interest or other accruals of any kind on such distribution. Nothing contained in the Plan shall require the Plan Trustee to attempt to locate any Holder of an Allowed Claim.

**2.      Failure to Claim Undeliverable Distributions**

Any Holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution within ninety (90) days from and after the date such distribution is returned as undeliverable shall have such Claim for such undeliverable distribution discharged and, except for distributions to be made after the Holders provide the Plan Trustee their proper address, shall be forever barred from asserting any such Claim against the Debtor, the Reorganized Debtor, the Plan Trustee or their respective professionals, the Plan Distribution Reserve, or the Disputed Claims Reserve. In such case, any consideration held for distribution on account of such Claim shall belong to the Plan Trust.

G.      *Time Bar to Payments*

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued. Any request by a Holder of a Claim in respect of such a voided check shall be made within 180 days from and after the date of issuance of such voided check. Any fees, costs or other expenses associated with the voided check shall be deducted from and paid out of such Holder's distribution. After such date, all Claims in respect of voided checks shall be discharged and forever barred, and the Plan Trust shall be entitled to retain all monies related thereto.

H.      *Distributions After Effective Date*

Distributions made after the Effective Date to Holders of Claims that are not Allowed as of the Effective Date, but which later become Allowed, shall be deemed to have been made on the Effective Date.

I.      *Fractional Dollars; De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. No payment shall be made on account of any distribution less than fifty dollars ($50.00) with respect to any Allowed Claim unless a request therefore is made in writing to the issuer of such payment on or before ninety (90) days after the Effective Date.

J.      *Fractional Interests; De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of New Firstbase Equity Interests will not be made. Whenever any payment of a fraction of an Interest

under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest number (up or down), with half shares of New Firstbase Equity Interests being rounded down. No payment in New Firstbase Equity Interests shall be made on account of any distribution of less than 10 shares with respect to any Allowed Claim unless a request therefore is made in writing to the issuer of such payment on or before ninety (90) days after the Effective Date.

K.      *Setoffs/Recoupment*

Notwithstanding anything contained herein to the contrary, the Plan Trustee may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff or exercise recoupment against any Allowed Claim or Allowed Administrative Expense and the distributions to be made on account thereof (before any distribution is made on account of such Claim or Administrative Expense), the rights and Causes of Action of any nature related to the Claim or Administrative Expense that it may hold against the Holder of such Allowed Claim or Allowed Administrative Expense; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claims, rights and Causes of Action that the Debtor may possess against such Holder.

L.      *Preservation of Subordination Rights*

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Plan Trustee of any Allowed Claim or Equity Interest shall remain valid, enforceable and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

M.      *Waiver by Creditors of All Subordination Rights*

Each Holder shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has individually and collectively with respect to any such distribution made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined unless such rights have been asserted prior to the Effective Date.

N.      *Claims Paid by Third Parties*

**1.      Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives Payment in Full on account of such Claim from a party that is not the Debtor, the Reorganized Debtor or the Plan Trustee. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, the Reorganized Debtor or the Plan Trustee

on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to the Plan Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

### 2.      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to Pay in Full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurer's agreement, such Claim may be expunged to the extent of any payment on the Claims Register by the Plan Trustee without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, payments to Holders of Allowed Claims covered by the Debtor's insurance policies shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

### ARTICLE VIII
### PROCEDURES FOR RESOLUTION OF DISPUTED,
### CONTINGENT AND UNLIQUIDATED CLAIMS

A.      *Disallowance of Claims or Interests*

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

B.      *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the express written authorization of the Bankruptcy Court or the Plan Trustee, and, to the extent such authorization is not received, any such new or amended Claim filed

shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Prosecution of Objections to Disputed Claims*

Upon the Effective Date, the Plan Trustee shall solely be responsible for pursuing any objection to the allowance of all Disputed Claims and shall have the right to exercise all rights of setoff and recoupment and other defenses that the Debtor or its Estate may have with respect to any such Disputed Claim. The Plan Trustee shall have the exclusive authority to settle, compromise or withdraw any objections to any Disputed Claims without necessity of further approval of the Bankruptcy Court.

Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Disputed Claims shall be served and filed not later than one-hundred-eighty (180) days after the Effective Date; provided, however, that this deadline may be extended upon motion by the Plan Trustee, without notice to Holders of Disputed Claims.

D.    *Estimation of Claims*

The Plan Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Plan Trustee previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court, including the Claim resolution procedures established under the Plan and approved by the Bankruptcy Court in the Confirmation Order.

E.    *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim.

F.    *Payments and Distributions on Disputed Claims*

Notwithstanding any provision hereof to the contrary, the Plan Trustee may, in its discretion, pay the undisputed portion of a Disputed Claim.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVE DATE OF THE PLAN

A.    *Conditions Precedent to Confirmation*

The following are conditions precedent to Confirmation of the Plan that must be (A) satisfied or (B) waived in the sole discretion of the Plan Proponent: (i) a Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court; (ii) the entry of the Confirmation Order in form and substance reasonably satisfactory to the Plan Proponent; and (iii) the Plan Supplement, and all of the schedules, documents, and exhibits contained therein, shall have been filed.

B.    *Conditions Precedent to Effective Date of Plan*

The following are conditions precedent to the Effective Date of the Plan that must be (A) satisfied or (B) waived in the sole discretion of the Plan Proponent: (i) confirmation shall have occurred and the Confirmation Order in form and substance satisfactory to the Plan Proponent shall have been entered by the Bankruptcy Court; (ii) the Confirmation Order shall have become a Final Order; (iii) there shall not be in effect on the Effective Date any (a) order entered by a U.S. court, (b) order, opinion, ruling or other decision entered by any other court or governmental entity or (c) United States or other applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan; (iv) the New Equity Plan Trust Contribution and New Equity Capitalization Contribution being fully funded; and (v) all other actions and documents necessary to implement the Plan shall have been effected or executed.

C.    *Effect of Non-Occurrence of Effective Date*

If the conditions listed in Article IX.A and B hereof are not satisfied or waived in accordance with Article IX hereof, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against or any Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, the Plan Proponent or any other party; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor or the Plan Proponent.

## ARTICLE X
## RELEASE, EXCULPATION, INJUNCTIVE AND RELATED PROVISIONS

A.    ***Discharge of All Claims and Release of Liens***

**Except as otherwise provided by the Plan, pursuant to section 1141 of the Bankruptcy Code, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date.**

On the Effective Date and concurrently with the applicable distributions made under the Plan, and in the case of a Secured Claim, satisfaction of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, security interests, or any other property interests securing any Claim against Property of the Estate shall be fully released and discharged, and all right, title, and interest of any Holder of such liens, mortgages, deeds of trust, pledges, security interests, and other property interests shall revert to the Reorganized Debtor or Plan Trustee (as applicable) and any of its successors or assigns, in each case, without further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtor or the Plan Proponent.

### B.    *Injunction*

Except as otherwise expressly provided in this Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor which arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind which would interfere in any way with any Property of the Estate, (b) the enforcement, attachment, collection, or recovery of any Property of the Estate by any manner or means of any judgment, award, decree, or order against the Debtor, its Estate, the Reorganized Debtor, or the Plan Trust on account of any such Claim or Equity Interest, and/or (c) creating, perfecting, or enforcing any encumbrance of any kind against any Property of the Estate on account of any such Claim or Equity Interest. Such injunction shall extend to the Reorganized Debtor (and its successors and assigns) and its properties and interests in property. Any Person or Entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages from the willful violator. However, nothing contained in this Article shall prohibit the Holder of a timely filed proof of claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan or enjoin or prohibit the interpretation or enforcement by the Claimant of any obligations of the Debtor or the Plan Trustee under this Plan.

### C.    *Releases by the Debtor*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtor and its Estate, the Reorganized Debtor, on behalf of itself and its successors and assigns, the Plan Proponent or the Plan Trustee, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case,

31

the Debtor, the governance, management, transactions, ownership, or operation of the Debtor, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan, the Disclosure Statement, or any restructuring transaction (including the Restructuring), contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article X.C shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any restructuring transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt and notwithstanding anything to the contrary herein, none of Mark Milastsivy, Filipe Senna, or any other of the Debtor's Former Directors and Officers shall be Released Parties and all Causes of Action owned by the Debtor or the Debtor's Estate that may be asserted against such non-Released Parties are preserved under the Plan and will constitute Trust Assets.

**D.    *Exculpation***

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date (and following the Effective Date solely with respect to any issuance or distribution of securities, the distribution of any property, or the implementation of the restructuring, each pursuant to and in accordance with the Plan), of the Chapter 11 Case, the Debtor, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, or any restructuring transaction (including the Restructuring), contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the pursuit of Confirmation, the pursuit of Consummation of the Plan, or the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of any securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated

Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Article X.D (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any restructuring transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. For the avoidance of doubt and notwithstanding anything to the contrary herein, none of Mark Milastsivy, Felipe Senna, or any other of the Debtor's Former Directors and Officers shall be Exculpated Parties and all Causes of Action owned by the Debtor or the Debtor's Estate that may be asserted against such non-Exculpated Parties are preserved under the Plan and will constitute Trust Assets.

In addition to the foregoing, to the extent permitted by applicable law, no Exculpated Party shall have nor incur, and each Exculpated Party is hereby released and exculpated from, any Claim, interest, obligation, suit, judgment, damage, demand, debt, right, Causes of Action, loss, remedy, or liability for any claim, arising between the Petition Date and the Effective Date, in connection with or arising out of related to (i) any and all activities by the Debtor or the Plan Proponent in the operation of their respective businesses or in connection with the Restructuring. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Article X.D shall only be applicable to the maximum extent permitted by law; and (2) shall not be construed as exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence.

## ARTICLE XI
## RETENTION AND PRESERVATION OF CAUSES OF ACTION

A.    *Retention of Causes of Action*

Except as otherwise provided in the Plan, all Causes of Action shall, on the Effective Date, automatically and irrevocably vest in the Plan Trust free and clear of liens, claims, encumbrances and interests. The Plan Trustee shall have the exclusive right, authority, and discretion to institute,

commence, pursue, prosecute, abandon, transfer, settle, or compromise any and all such Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal) without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein.

B.    *Preservation of Causes of Action*

Except as otherwise provided in the Plan, the Plan Trustee reserves all rights to pursue any and all Causes of Action, including without limitation, any Causes of Action against Former Directors and Officers, and the Plan Trustee hereby reserves the right to pursue, administer, settle, transfer, litigate, enforce and liquidate all Causes of Action consistent with the terms and conditions of the Plan. Except as otherwise provided in the Plan, the Plan expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine or other rule of law, including, without limitation, any statute of limitations or the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a result of the Confirmation or Effective Date of the Plan, or the Confirmation Order. In addition, the Plan Trustee or the Reorganized Debtor expressly reserves the right to pursue or adopt any Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Reorganized Debtor or the Plan Trustee is a defendant or an interested party, against any Entity including, without limitation, the plaintiffs and co-defendants in such lawsuits.

## ARTICLE XII
## RETENTION OF JURISDICTION

A.    *Bankruptcy Court*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and to the extent permitted by applicable law, the Bankruptcy Court shall retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Case or the Plan after Confirmation and after the Effective Date, and any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157 including, without limitation, jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any Administrative Expense Request and the resolution of any and all objections to the allowance or priority of Claims;

2.    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions hereof;

4.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including all Causes of Action and objections or estimations to Claims or Equity Interests, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Plan Trustee or any other Entity after the Effective Date; provided, however, that the Plan Trustee reserves the right to prosecute the Causes of Action in all appropriate jurisdictions;

5.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and of all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan;

6.      Enter such orders necessary to sell, dispose of, liquidate, and/or convey any property of the Estate.

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan, except as otherwise provided herein;

9.      Resolve any cases, controversies, suits or disputes with respect to the releases, injunctions and other provisions contained in Article X hereof and enter any orders that may be necessary or appropriate to implement such releases, injunctions and other provisions;

10.     Enter and implement any orders that are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11.     Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement; and

12.     Enter an order and/or Final Decree concluding the Chapter 11 Case.

Notwithstanding any other provision in this Article to the contrary, nothing herein shall prevent the Plan Trustee from commencing and prosecuting any Causes of Action before any other court or judicial body which would otherwise have appropriate jurisdiction over the matter and parties thereto, and nothing herein shall restrict any such courts or judicial bodies from hearing and resolving such matters.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

A.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d) and 7062.

B.    *Compromise of Controversies*

Pursuant to Bankruptcy Rule 9019 in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtor or the Plan Proponent or any of them, arising out of, relating to, or in connection with, the business or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan or the Disclosure Statement, and the findings of the Bankruptcy Court shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, the Plan Proponent, Creditors and other parties in interest, and are fair and equitable and within the range of reasonableness. The provisions of this Plan, including without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Plan Trustee shall be liable for and shall pay the fees under 28 U.S.C. § 1930 until entry of an order converting, dismissing or closing the Chapter 11 Case, whichever occurs first. In addition, the Plan Trustee shall file post-confirmation quarterly reports in conformity with U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Case, whichever comes first.

D.    *Modification of Plan*

Subject to the limitations contained in the Plan:

1.    The Plan may be amended or modified by the Plan Proponent (a) before the Confirmation Date, to the extent permitted by section 1127 of the Bankruptcy Code; (b) after the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, to the extent the Plan Proponent institutes proceedings in the Bankruptcy Court, pursuant to section 1127(b) of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order or to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or orders of the Bankruptcy Court; or (c) after the entry of the Confirmation Order, upon order of the Bankruptcy Court in accordance with section 1127(b) of the Bankruptcy Code.

2.      The Plan Proponent reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code to the extent permissible under section 1127 of the Bankruptcy Code without the need to resolicit acceptances.

3.      After the Effective Date, the Reorganized Debtor may amend or modify, upon order of the Bankruptcy Court, the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

E.      *Revocation of Plan*

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization or liquidation. If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and without prejudice to any party, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, the Plan Proponent or any other Entity, (b) prejudice in any manner the rights of the Debtor, the Plan Proponent or any other Entity, or (c) constitute an admission of any sort by the Debtor, the Plan Proponent any other Entity.

F.      *Confirmation of the Plan under Section 1129(b)*

The Plan Proponent requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Plan Proponent reserves the right to amend the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification. See Section VII.C.4 of the Disclosure Statement for further discussion of why the Plan Proponent believes the Plan meets the non-consensual plan confirmation requirements of Section 1129(b) with respect to both Class 3 and Class 6, which are Impaired under the Plan.

G.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

H.      *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall occur. None of

the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor or the Plan Proponent with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor or the Plan Proponent with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

I.      *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, under this Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtor; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment.

All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtor in the Chapter 11 Case, whether in connection with a sale pursuant to section 363 of the Bankruptcy Code or otherwise, shall be deemed to be or have been done in furtherance of this Plan.

J.      *Further Assurances*

The Creditors receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

K.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent by first-class U.S. mail, postage prepaid, as follows:

To the Debtor:
Kirby Aisner & Curley LLP
700 Post Rd, Suite 237
Scarsdale, NY 10583
Attn: Dawn Kirby, Esq. and Dana Brescia, Esq.

To the Plan Proponent and/or the Reorganized Debtor:
Royer Cooper Cohen Braunfeld LLC

1717 Arch Street, Suite 4700
Philadelphia, PA 19103
Attn: Matthew Faranda-Diedrich, Esq.

- and -

Royer Cooper Cohen Braunfeld LLC
1120 Avenue of the Americas
4th Floor
New York, NY 10036
Attn: Marc Skapof, Esq.

To the U.S. Trustee:
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Suite 534
New York, NY 10004-1408
Attn: Andrew Velez-Rivera, Esq.

To the Plan Trustee:
To be designated in the Plan Supplement

L.    *Transactions on Business Days*

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

M.    *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponent or the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and provisions hereof.

N.    *Post-Confirmation Date Service List*

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Bankruptcy Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order shall be required to be sent to such Entities. Any party in interest that requests notice of matters after the Confirmation Date shall contact the Plan Trustee, in accordance with Article XIII.K of this Plan.

O.    *Post-Effective Date Fees and Expenses*

From and after the Effective Date, the Plan Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable and

necessary fees and expenses in accordance with and from the funds provided for such use in this Plan.

P.    *Severability*

The provisions of this Plan shall not be severable unless such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

Q.    *Conflicts*

To the extent any provision of this Plan or the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and control.

To the extent any provision of the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of this Plan, the terms and provisions of the Plan and the Confirmation Order shall govern and control.

R.    *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and still extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the closing of the Chapter 11 Case. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

S.    *Entire Agreement*

This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

T.    *Closing of Chapter 11 Case*

The Plan Trustee shall promptly, upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close the Chapter 11 Case. Furthermore, the Voting Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.

U.      *Change of Control Provisions*

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of the Plan shall be waived or otherwise cancelled under the Plan.

**Dated:** ~~September 15~~October 22, **2025**

**PLAN PROPONENT**

_____

By:     _____
Title:  _____

| Summary report: Litera Compare for Word 11.9.1.1 Document comparison done on 10/22/2025 12:47:01 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://rccb.cloudimanage.com/LEGAL/21928203/6 | |
| **Modified filename:** Amended Chapter 11 Plan of Firstbase.io_ Inc. Proposed by Harbor Business Compli(22009943.2).docx | |
| **Changes:** | |
| Add | 41 |
| Delete | 32 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 73 |