**SCALEWORKS FUND III, LP**
122 E. Houston Street
Suite 105
San Antonio, Texas 78205

October 22, 2025

Firstbase (Firstbase.io, Inc.)
1209 Orange Street
Wilmington, DE 19801

### Re: Letter of Intent to Acquire Firstbase.io, Inc.

To whom it may concern,

This letter (this "*Letter*") is intended to summarize the principal terms of a proposal being considered by Scaleworks Fund III, LP, a Delaware limited partnership ("*Buyer*"), regarding the acquisition, either directly or through a subsidiary, of either (i) all of the issued and outstanding capital stock (or other equity interests) of Firstbase.io, Inc. or (ii) substantially all of the assets, and certain specified liabilities, of Firstbase.io, Inc. ("*Seller*"), a provider of incorporation, compliance and ancillary services to businesses (the "*Business*"). The possible acquisition of Seller or its assets is referred to as the "Transaction" and Buyer and Seller are referred to collectively as the "*Parties*", and each a "*Party*".

Scaleworks has a strong track record of acquiring and scaling software companies that serve entrepreneurs and small businesses. To date we have executed over 25 acquisitions. Notably, we previously owned Earth Class Mail, a provider of digital mailroom and business address services, which shares meaningful parallels with Firstbase in terms of customer profile, operational complexity, and compliance requirements. We sold Earth Class Mail to Legalzoom in November 2021. Our deep domain experience in this space positions us well to support Firstbase through its next phase of growth.

Fergus Burns, who served as CEO of Earth Class Mail during our ownership and led its successful transformation, would similarly lead this acquisition on our behalf and serve as CEO. John Gallagher, who previously served as CEO of Scaleworks's portfolio business, Element SaaS Finance, and has worked closely with Scaleworks for several years, would serve as Chief Financial Officer. Scaleworks is investing out of its $100 million Fund III and has committed capital to complete this transaction.

**1.    Acquisition of Seller and Purchase Price.**

(a)    Subject to the satisfaction of the conditions described in this Letter, at the closing of the Transaction, Buyer would acquire, either (i) all of the issued and outstanding capital stock (or other equity interests) of Seller (the "*Stock*") or (ii) substantially all of the Seller's assets (the "*Assets*"), free and clear of all liens, claims, and encumbrances, at the purchase price set forth in Section 1(b).

(b)    The purchase price would be $17,000,000 (the "*Purchase Price*") in cash, subject to adjustment, and payable as follows:

(i)    $10,000,000 payable at the closing of the Transaction; and

(ii)    $2,000,000 to be held back (the "*First Holdback*") by Buyer for a period of 1 year after the closing, in order to secure the performance of Seller's post-closing obligations under the definitive purchase agreement.

(iii)    $5,000,000 to be held back (the "*Second Holdback*") by Buyer for a period of 2 years after the closing, payable upon the Business maintaining a total revenue

growth rate of at least 25% (vs. the 58% growth rate achieved for the twelve-month period ending July 31, 2025) for each of the first and second year post closing. For the avoidance of doubt, if the business achieves such growth rate for one of the two years, they will receive 50% of the Second Holdback.

(c) Buyer has calculated the Purchase Price on the basis of information currently known to Buyer.

2. **Proposed Definitive Agreement**. As soon as reasonably practicable after the execution of this Letter, the Parties shall commence to negotiate a definitive purchase agreement (the "*Definitive Agreement*") relating to Buyer's acquisition of the Stock or Assets, to be drafted by Buyer's counsel. The Definitive Agreement would include the terms summarized in this Letter and such other representations, warranties, conditions, covenants, indemnities and other terms that are customary for transactions of this kind and are not inconsistent with this Letter.

3. **Holdback Amount**. The Holdback Amount shall be used to satisfy any of Seller's post-closing obligations under the Definitive Agreement or ancillary documents including, without limitation, any indemnification obligations of Seller arising from the breach of its representations and warranties under the Definitive Agreement (a "*Rep and Warranty Indemnification Obligation*"). With respect to the foregoing:

(a) The Holdback Amount shall be Buyer's sole recourse against Seller for a Rep and Warranty Indemnification Obligation, except for obligations relating to (i) the breach of certain "Fundamental Representations" identified by the parties ("*Fundamental Reps*"), which shall include, without limitation, Seller's representations and warranties regarding its organization and qualification, authority, unencumbered title to assets, condition and sufficiency of assets, tax matters, employee benefits, and brokers' and finders' fees, or (ii) fraud, criminal activity, willful misconduct or similar illegal or bad acts of Seller (collectively, "*Bad Acts*").

(b) Seller's maximum liability for Rep and Warranty Indemnification Obligations, except for obligations arising from the Fundamental Reps or Bad Acts, shall be the Holdback Amount.

(c) Buyer shall not pursue a Rep and Warranty Indemnification Obligation against Seller, except for obligations arising from the Fundamental Reps or Bad Acts, until the total dollar amount of such obligations equal or exceed $150,000, after which Seller shall be liable from dollar zero.

4. **Conditions**. Buyer's obligation to close the proposed Transaction will be subject to customary conditions, including:

(a) Buyer's satisfactory completion of due diligence;

(b) the managers of Buyer's General Partner approving the Transaction;

(c) the Board of Directors and stockholders of Seller approving the Transaction;

(d) the Parties' execution of the Definitive Agreement and all ancillary agreements;

(e) the receipt of any necessary or desirable third party consents, releases and regulatory approvals, on terms satisfactory to Buyer, such as required court approvals;

(f) Seller and its principles and affiliates being bound by restrictive covenants, in a form acceptable to Buyer, agreeing not to, for a period of 3 years after the closing: (i) compete with the Business, (ii) hire or solicit any employee of the Business or encourage any such employee to leave such employment, or (iii) cause, induce or encourage any actual or prospective client, customer, supplier or licensor of the Business or any other person who has a material business relationship with the Business to terminate or modify any such actual or prospective relationship; and

(g) there being no material adverse change in the business, results of operations, prospects, condition (financial or otherwise) or assets of the Business.

5. **Due Diligence**. From and after the date of this Letter, Seller will authorize its management to allow Buyer and its advisors full access to the facilities, records, key employees, customers, suppliers and advisors of the Business for the purpose of completing Buyer's due diligence review. The due diligence investigation will include, but is not limited to, a complete review of the financial, legal, tax, environmental, intellectual property and labor records and agreements of the Business, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant.

6. **Employment Arrangements**. Buyer intends to offer continuing employment to the Company's current employees, subject to further diligence. We are excited about the potential to work with the existing team on Firstbase's next phase of growth.

7. **Publicity**. Buyer shall have the right to make public announcements regarding the closing of the Transaction, and determine the content, mediums and other aspects of such public announcements, *provided that* Buyer will reasonably consult with Seller prior to making any such public announcements. Seller shall not make any public announcements regarding the Transaction.

8. **Covenants of Seller**. During the period from the signing of this Letter through the execution of the Definitive Agreement, Seller will: (a) conduct the Business in the ordinary course in a manner consistent with past practice, (b) maintain its properties and other assets in good working condition (normal wear and tear excepted), and (c) use its best efforts to maintain the Business and employees, customers, assets and operations as an ongoing concern in accordance with past practice.

9. **Termination**. This Letter will automatically terminate and be of no further force and effect upon the earlier of (a) execution of the Definitive Agreement by Buyer and Seller, (b) mutual agreement of Buyer and Seller, and (c) 60 days following the date of Seller's acceptance of this Letter. Notwithstanding anything in the previous sentence, paragraphs 12 through 17 shall survive the termination of this Letter, and the termination of this Letter shall not affect any rights any Party has with respect to the breach of this Letter by another Party prior to such termination

10. **Expiration**. This offer will remain in effect until 5:00pm Pacific Time on the date that is 7 days following the date of this Letter, unless accepted or rejected by Seller, or withdrawn by Buyer prior to that time.

11. **Governing Law**. This letter shall be governed by and construed in accordance with internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Delaware.

12. **Confidentiality**. This Letter and the terms herein are confidential to the Parties and their representatives and advisors and shall not be disclosed by the Parties, except to their representatives and advisors, without the prior written consent of the other Party.

13. **No Third Party Beneficiaries**. Except as specifically set forth or referred to herein, nothing herein is intended or shall be construed to confer upon any person or entity other than the Parties and their successors or assigns, any rights or remedies under or by reason of this Letter.

14. **Expenses**. The Parties will each pay their own transaction expenses, including the fees and expenses of investment bankers and other advisors, incurred in connection with the proposed Transaction.

15. **No Binding Agreement**. This Letter reflects the intention of the Parties, but for the avoidance of doubt neither this Letter nor its acceptance shall give rise to any legally binding or enforceable obligation on any Party, except with regard to paragraphs 9 through 16 hereof. No contract or agreement providing for any transaction involving the Business shall be deemed to exist between Seller and Buyer and any of its affiliates unless and until a final definitive agreement has been executed and delivered.

16. **Miscellaneous**. This Letter may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement. The headings of the various sections of this Letter have been inserted for reference only and shall not be deemed to be a part of this Letter.

[*Signature Page Follows*]

We believe that our acquisition of the Firstbase Business is an excellent opportunity for both Scaleworks and Firstbase. If you are in agreement with the terms set forth above and desire to proceed with the proposed Transaction on that basis, please sign this Letter in the space provided below and return an executed copy to me.

|  | Very truly yours,<br><br>SCALEWORKS FUND III, LP, a Delaware limited partnership<br><br>By: Scaleworks Associates III, LLC, a Delaware limited liability company, its General Partner |
|---|---|
|  | By: *Ed Byrne* (DocuSigned)<br>Name: Ed Byrne<br>Title: Manager |
| *Agreed to and accepted*: |  |
| **Seller:**<br><br>Firstbase.io, Inc.<br><br>By: *[signature]*<br>Name: MARK MILASTSIVY<br>Title: CEO |  |

[*Appendix Page Follows*]

5

## Appendix A - About Scaleworks & Bios

Scaleworks is a private investment firm based in Texas which invests in vertical business-to-business software companies. Scaleworks operates a "Venture Equity" model in which it invests for high growth while taking a capital efficient approach. Furthermore, Scaleworks does not believe in highly leveraged buy-outs and, in its history, has never leveraged a significant amount of debt on an investment.

Scaleworks partners with management teams to be category leading SaaS companies. Founded in 2016, Scaleworks has acquired more than 25 businesses, and in turn, a number of those businesses have made additional acquisitions. Scaleworks has a history of leading SaaS companies through periods of change, redefining and executing leadership's new strategic vision, delivering high growth and ultimately providing strong returns to shareholders and management. Scaleworks funds have raised over $250 million since inception. The following are some of the areas where Scaleworks can add significant value:

- **Resources** — Scaleworks is a lean team focused on assisting portfolio companies where they have resource gaps, typically due to their lack of scale. Scaleworks recruits senior talent using its in-house staffing team. It also provides office space from its San Antonio headquarters. Scaleworks provides a central HR and Payroll service to ease the administration burden and take advantage of economies of scale to reduce costs for all portfolio companies.
- **Network** — Scaleworks' team is composed of SaaS business leaders with many years of domain expertise prior to founding Scaleworks. Scaleworks' current and prior portfolio companies' CEO's and leadership teams are also available for peer discussions and sharing of best practices.
- **Strategic Business Development** — Scaleworks prides itself on being an active portfolio supporter, working with leadership on strategic initiatives and evaluating acquisition opportunities.
- **Financial Support** — Scaleworks has a history of raising capital efficiently. To date, Scaleworks has raised 3 Scaleworks funds, 2 additional Element Venture Finance debt funds, and a Soilworks fund. Scaleworks has access to low-interest debt, backed by the fund, as well as the ability to raise debt directly for portfolio companies, from large institutions and from Scaleworks-operated debt funds.

Fergus Burns: Executed a 588-day turnaround as CEO of EarthClassMail, a Scaleworks portfolio company. He grew revenue 50%, improved net revenue retention from 90% to 108%, and delivered an exit at 4.5x return on invested capital. The transformation was driven by systematic operational improvements and customer-obsessed product improvements. Before EarthClassMail, Fergus led organizations at Amazon, Criteo, and earlier technology companies. He currently serves as Venture Partner at Scaleworks. Fergus holds a B.Sc. (Honours) in Applied Computing from Ulster University, Ireland.

John Gallagher: Built Element SaaS Finance (ESF), a Scaleworks portfolio company, from inception into a platform that deployed $100 million across 52 SaaS companies. He personally led due diligence on 462 businesses, developing pattern recognition across unit economics, founder quality, and operational red flags. The portfolio achieved 13% IRR with zero principal losses. Before ESF, John managed multi-company investment portfolios at Irelandia Investments, the family office of the Ryanair founding family, overseeing equity stakes across aviation businesses on three continents. John is a Fellow of Chartered Accountants Ireland and holds a B.Comm from University College Dublin, Ireland.

## Consent to Public Disclosure of LOI

1 message

**Cody Halff** <cody@scaleworks.com>                              Wed, Oct 22, 2025 at 5:03 PM
Reply-To: cody@scaleworks.com
To: mark@firstbase.io
Cc: John Gallagher <john@rathlincapital.co>, Fergus Burns <fergus@rathlincapital.co>, filipe@firstbase.io, tyler@calmfund.com, chris.atkins@novelcapital.com, keith@novelcapital.com

Mark,

We hereby consent to the disclosure of the terms and waive the confidentiality provision included in our Letter of Intent for purposes of public filing.

Please find the signed LOI attached for reference.

**Cody Halff**
Vice President, Corporate Development
cody@scaleworks.com
210.478.1221 | LinkedIn

scaleworks

**Firstbase_LOI_-_Scaleworks_(10.22.25).pdf**
308K