| | |
|---|---|
| Dawn Kirby<br>Dana Brescia<br>KIRBY AISNER & CURLEY LLP<br>700 Post Road, Suite 237<br>Scarsdale, New York 10583<br>Telephone: 914-401-9500<br>Email: dkirby@kacllp.com<br>Email: dbrescia@kacllp.com<br><br>*Counsel to the Debtor* | Derek L. Shaffer<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 13th Street NW<br>Washington, D.C. 20004<br>Telephone: 202-538-8000<br>Email: derekshaffer@quinnemanuel.com<br><br>Eric D. Winston<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: 213-443-3000<br>Email: ericwinston@quinnemanuel.com<br><br>*Special Litigation Counsel to the Debtor* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:<br><br>FIRSTBASE.IO, INC.<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 24-11647 (LGB) |

**REPLY IN FURTHER SUPPORT OF THIRD AND FINAL APPLICATION OF
QUINN EMANUEL URQUHART & SULLIVAN, LLP FOR THE ALLOWANCE
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") hereby respectfully replies to Harbor Business Compliance Corporation's ("Harbor") objection to Quinn Emanuel's Third and Final Application for the Allowance of Compensation and Reimbursement of Expenses.

### INTRODUCTION

Having agreed to pay all allowed professional fees as part of its reorganization plan, Harbor now seeks to deprive Quinn Emanuel of over a million dollars of reasonably incurred fees, primarily based on the observation that the Third Circuit appeal Quinn Emanuel briefed and argued did not pull Firstbase out of bankruptcy. But the Court has already considered and accounted for

Harbor's arguments in its prior orders allowing in part and reducing in part Quinn Emanuel's interim fee applications, and it should continue to stand by those decisions in approving Quinn Emanuel's final fee application.

*First*, Quinn Emanuel provided substantial value by pursuing a realistic opportunity to exit the bankruptcy by reducing Harbor's $30 million judgment against the estate—and ultimately succeeding in eliminating over $11 million of liability at a cost of one-tenth that amount. The mere fact that the appeal did not fully reverse the judgment does not justify depriving Quinn Emanuel of fees based on hindsight—an approach that would contradict Second Circuit law and discourage future counsel from advocating zealously on behalf of entities in bankruptcy. Indeed, the Court has already allowed the vast majority of Quinn Emanuel's fees in full view of the results of the appeal. Its interim orders remain correct and should be reaffirmed here.

*Second*, Harbor argues that Quinn Emanuel's fees should not be allowed because—in Harbor's view—Firstbase should have proposed its reorganization plan sooner and relied less on the appeal to exit the bankruptcy than it purportedly did. But Quinn Emanuel was not responsible for Firstbase's plan; indeed, Harbor strenuously argued Quinn Emanuel should *not* handle such matters, and the Court specifically so instructed (including when disallowing certain fees Quinn Emanuel had incurred). Quinn Emanuel's fees were properly incurred in handling the litigation for which Quinn Emanuel was specially retained; they should not be disallowed on the basis of the Debtor's separate decisions concerning a reorganization plan.

*Third*, Harbor entirely omits that a substantial portion of Quinn Emanuel's fees are attributable to necessary matters beyond the appeal Harbor criticizes—including both mediation and Harbor's own wasteful adversary proceeding that Quinn Emanuel was forced to defend (with this Court's authorization) at substantial expense after trying to head off litigation through pre-

2

motion correspondence. Harbor has no one to blame but itself for these fees, which the Court has already approved on an interim basis.

Harbor's objection should be overruled, and Quinn Emanuel's final fee application should be granted in its entirety.

## ARGUMENT

**I.    Quinn Emanuel's Services Were Reasonable, Necessary, and Beneficial To The Estate When They Were Rendered**

Harbor does not dispute that Quinn Emanuel has satisfied the majority of the factors courts consider under 11 U.S.C. § 330(a)(3), including by substantiating the time spent, rates applied, and qualifications of Quinn Emanuel's professionals. Instead, focusing on what it calls "the meaningless result of the [Third Circuit] Appeal," Obj. ¶ 16, Harbor appears to question only whether Quinn Emanuel's services were "beneficial at the time which the service was rendered," *see* 11 U.S.C. § 330(a)(3)(C). But Harbor's premise is false. Pursuing the appeal—a reasonable opportunity to exit the bankruptcy by reducing the $30 million judgment that forced Firstbase into insolvency—was both necessary and beneficial to the estate. That the appeal ultimately did not pull Firstbase out of bankruptcy (although it did eliminate $11 million in liability) does not negate its reasonableness or necessity at the time Quinn Emanuel's services were rendered.

The Second Circuit has explained that attorneys' professional fees "should be compensable" under Section 330 as long as they "are reasonably likely to benefit the debtor's estate" ***under the circumstances in which they were incurred***. *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (vacating denial of fee application); *accord In re Celsius Network LLC*, 2024 WL 3289579, at *7 (Bankr. S.D.N.Y. July 2, 2024). Contrary to Harbor's suggestion, "[a] court does not determine 'reasonableness' through hindsight." *In re CCT Commc'ns, Inc.*, 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing *In re Brous*, 370 B.R. 563, 570

3

(Bankr. S.D.N.Y. 2007)). "Professionals are not guarantors of success, and they are entitled to reasonable compensation for reasonable services, even if things do not turn out so well as the client had hoped." *In re Yoga Smoga, Inc.*, 2019 WL 461130, at *2 (Bankr. S.D.N.Y. Feb. 5, 2019); *see CCT*, 2010 WL 3386947, at *5 ("A decision reasonable at first may turn out wrong in the end.").

There is no question Quinn Emanuel was justified in vigorously litigating the appeal under the circumstances. While the Court may not have believed that complete success on appeal was the most likely outcome, everyone but Harbor has always agreed that Quinn Emanuel should pursue it. The Court authorized Quinn Emanuel to appeal Harbor's judgment in December 2024, ECF No. 45, and subsequently emphasized that "I'm not saying you shouldn't ask [the Third Circuit] for an expedited appeal . . . I mean please feel free to. . . . and perhaps that's going to work out," Feb. 20, 2025 Hr'g Tr. 57:16–20; *see id.* at 57:9–15 (acknowledging an expedited appeal "could fundamentally alter what a bankruptcy plan looks like and how this bankruptcy proceeding gets resolved"). The Third Circuit likewise credited the meritoriousness of the appeal by taking the extraordinary step of expediting briefing and argument, calibrating them to occur before the projected conclusion of bankruptcy proceedings. ECF No. 99 (Third Circuit order expediting appeal and soliciting "the anticipated date of completion of the Chapter 11 proceedings"). And after the appeal was fully briefed—and the vast majority of Quinn Emanuel's fees had already been incurred—the Court expressly recognized "that one possible result of the appeal is that the Third Circuit could overturn Harbor's judgment in its entirety." May 27, 2025 Hr'g Tr. 73:7–9.

Given these and other signals—and the immense potential upside for the estate and all stakeholders other than Harbor—Harbor cannot credibly argue that a reasonable lawyer would not have diligently pursued the appeal as Quinn Emanuel did. *See Ames*, 76 F.3d at 72 (test under Section 330 is "objective [and] based upon what services a reasonable lawyer or legal firm would

4

have performed in the same circumstances."). To further reduce Quinn Emanuel's fees based on hindsight would not only defy governing law, but also discourage counsel from representing debtors in the future for fear that they will not recoup their fees if they lose. *See id.* (recognizing "the [bankruptcy] statute's aims that . . . future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation"); *In re UNR Indus., Inc.*, 986 F.2d 207, 210 (7th Cir. 1993) ("The important thing is to provide compensation in bankruptcy equivalent to that outside it.").

As to any further arguments Harbor purports to "incorporate[] by reference and reassert[]" from its prior fee objections, Obj. ¶ 13, the Court has already carefully considered and addressed them by either allowing Quinn Emanuel's fee applications or reducing them to the degree the Court deemed reasonable. *See* ECF No. 168 (First Interim Fee Order); ECF No. 276 (Second Interim Fee Order). Quinn Emanuel's present application accepts the Court's prior adjustments, simply seeking final approval of the fees already allowed along with $36,799.50 in subsequently incurred fees that Harbor makes no attempt to challenge.[1] Harbor offers no new basis to deviate from those previously allowed amounts now, and its objection should be overruled.

---

[1] Harbor's request that the Court "limit[] total fees for Quinn Emanuel (both prior and present) to the 10% variance permitted under the Cash Collateral Orders," Obj. ¶ 17, should be denied. Harbor has made similar requests in prior fee applications and the Court has rejected them. *Compare* ECF No. 259 (requesting the same relief using the same language), *with* ECF No. 276 at 4 (allowing approximately $687,000 in fees and expenses compared to approximately $100,000 in total cash collateral authorization during the same period). In all events, the Court's cash collateral orders are not an appropriate basis to cap Quinn Emanuel's fees. Cash collateral orders are authorizations for the use of the Debtor's cash reserves (irrelevant now that Harbor has agreed to assume responsibility for allowed professional fees), and not a limit on the amount of fees the Court may allow upon an application demonstrating the actual amount of fees and expenses incurred. *See* 11 U.S.C. § 330(a)(1)(A) (authorizing "reasonable compensation for actual, necessary services rendered").

II.  **Quinn Emanuel Should Not Be Penalized Because Firstbase Could Have Pursued Additional Strategies Outside Of Quinn Emanuel's Mandate**

Harbor also invokes this Court's admonition that Firstbase not treat the appeal as an exclusive means of exiting the bankruptcy. Here, Harbor errs in accusing Firstbase of not advancing an actual proposal, which Firstbase in fact did. *See* ECF No. 236 (Firstbase's proposed plan of reorganization). More importantly, however, Quinn Emanuel's services were rendered and fees were incurred specifically in litigating that appeal. *See* Obj. ¶¶ 14–16. Parallel bankruptcy proceedings handled by bankruptcy counsel have no bearing in this regard.

*First*, Quinn Emanuel is not responsible for Firstbase's decisions concerning whether and when to file a competing reorganization plan. Obj. ¶ 14 (admitting that "the decision on the strategy to pursue ultimately lies with the Debtor"). Indeed, Harbor has forcefully objected to Quinn Emanuel's billing *any* time to plan-related advising. *See, e.g.*, ECF No. 164 at 15–16 (calling Quinn Emanuel's time entries concerning "bankruptcy plans and proposals for financing" and similar topics "unauthorized [and] unnecessarily duplicative").[2] Given its limited role as special litigation counsel, Quinn Emanuel cannot reasonably be penalized just because Harbor believes Firstbase should have approached the Chapter 11 proceedings differently.

*Second*, even if Firstbase should have pursued strategies ***in addition*** to the appeal, that does not render Quinn Emanuel's fees in pursuing that appeal unreasonable. (Harbor's contrary position is akin to arguing that a skydiver's secondary parachute has no value if she neglects to pack a primary one.) Because the services Quinn Emanuel performed were reasonably necessary

---

[2] Harbor asserts that "Quinn Emanuel had a duty to be up front and honest with the Debtor as to the likelihood of success of the Appeal" and "should have advised the Debtor to engage in efforts to reorganize," Obj. ¶ 14, but offers no basis to conclude Quinn Emanuel provided unsound advice.

and beneficial, *see supra* Section I, its fees should be allowed regardless of whether Firstbase and its bankruptcy counsel could have pursued other options too.

### III. Harbor Omits Its Own Responsibility For Many Of Quinn Emanuel's Fees

In critiquing the total dollar amount of Quinn Emanuel's fees, Harbor elides that hundreds of thousands of dollars of those fees are due entirely to its own vexatious conduct. Quinn Emanuel had to spend well over 100 hours defending against Harbor's frivolous adversary proceeding—with which the Court indicated it had "serious problems," ECF No. 259-1 at 20:22–23, before Harbor ultimately withdrew it pursuant to its reorganization plan—after it was unable to dissuade Harbor through pre-motion correspondence. Quinn Emanuel likewise had to incur thousands of dollars in fees opposing Harbor's efforts in the Third Circuit to seal material so obviously public that Harbor itself had publicized it in its own filings. Harbor should not be permitted to generate substantial litigation fees and then—after voluntarily assuming responsibility for those fees—demand the Court let Harbor off the hook at Quinn Emanuel's expense.

### CONCLUSION

For the foregoing reasons and those set out in Quinn Emanuel's application, Quinn Emanuel respectfully requests that the Court overrule Harbor's objection and enter an order allowing (a) the compensation incurred during the Application Period in the amount of $36,799.50 for reasonable and necessary professional services rendered to the Debtor; (b) final approval of the fees and expenses granted and paid in the First Interim Order and the Second Interim Order; (c) $702,825.28 in fees allowed but not disbursed in the First Interim Order; and (d) $480,606.37 in fees allowed but not disbursed in the Second Interim Order.

Respectfully submitted this 5th day of January, 2026.

/s/ Derek L. Shaffer

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Derek L. Shaffer
555 13th Street NW
Washington, D.C. 20004
Telephone: 202-538-8000
Email: derekshaffer@quinnemanuel.com

Eric D. Winston
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Email: ericwinston@quinnemanuel.com

*Special Litigation Counsel to the Debtor*

-and-

KIRBY AISNER & CURLEY LLP
Dawn Kirby (NY Bar 2733004)
Dana Brescia (NY Bar 3936697)
700 Post Road, Suite 237
Scarsdale, New York 10583
Telephone: 914-401-9500
Email: dkirby@kacllp.com
Email: dbrescia@kacllp.com

*Attorneys to the Debtor*